IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1879.

---

ORDINARY OF THE STATE OF NEW JERSEY v. ROBERT
THATCHER AND OTHERS.

1. A deed cannot be delivered in escrow to the grantee or obligee.
2. A county surrogate acts as the deputy of the Ordinary, and a delivery to the former is a delivery to the latter, and, being thus, a delivery to the grantee cannot be in escrow.
3. On a special verdict the court can make only necessary or clear deductions from the facts found.
4. To constitute an escrow, the deed must be placed with the depositary on condition that it is not to go into effect until the doing of some act or the happening of some event in the future.
5. In the absence of such condition, a mere expectation, or a promise that something will be done, a delivery will not be held conditional.
6. A guardian's bond, calling in its premises for three sureties, was executed by two of them and left with the county surrogate, they at the time telling the guardian to bring in the third surety and he promising to do so, held binding on those executing, although the third surety failed to execute.

---

Suit in the Hunterdon Circuit on a guardian's bond. Under the direction of the court a special verdict was rendered. The facts found are sufficiently stated in the opinion.

403

Argued at June Term, 1879, before BEASLEY, CHIEF JUS-
TICE, and Justices DALRIMPLE and WOODHULL.

For the plaintiff, *J. N. Voorhees.*

For the defendants, *John T. Bird.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.  The first subject of inquiry
in this case is, whether a guardian's bond, given in the com-
mon form to the Ordinary, can be delivered in escrow to
the surrogate of a county ?  The proposition is stated inten-
tionally in this general form, so as to separate the question,.
for the purposes of the research, from the specialties of this
particular case, and which specialties will be considered in
another aspect of the discussion.

It has been frequently decided that a deed may be deliv-
ered in escrow to a co-obligor, even though such obligor be
the principal bondsman.  Such were the judgments in the
leading cases in this state of *State Bank* v. *Evans,* 3 *Green*
155, and of *Black* v. *Lamb,* 1 *Beasley* 108 ; 2 *Id.* 455.  In
both of these instances the deed in question respectively was.
delivered conditionally to one of the co-obligors, and in each
case the instrument was regarded as having been well deliv-
ered in escrow.  This same doctrine is maintained by such a.
multitude of authorities that it seems hardly open to contro-
versy anywhere, and it certainly is at rest so far as concerns
our own tribunals.  It might, however, tend to misconception
if this general statement of the legal rule should not be quali-
fied by an intimation that there may be cases in which an
obligor may, by his incaution, impart to the depositary of the
instrument delivered in escrow such an apparent right to pass
it away in an unqualified form to the obligee, as to prevent
such obligor from setting up the existence of a condition that
was to have been complied with before such instrument be-
came deliverable.  This restrictive rule has been sanctioned
by a number of the courts of this country, and has recently

been enforced by the Supreme Court of the United States in the case of *Dair* v. *United States*, 16 *Wall.* 1, in which a bond perfect on its face had been executed by sureties and by them delivered in escrow to the principal obligor, and who had passed it over in the ordinary course to the government; the attempted defence was that the instrument had been placed with the principal obligor as an escrow, and had been delivered by him in violation of the condition imposed; but the court adjudged that as the principal obligor had been clothed with an apparent right to transfer the bond without qualification, and as the officer of the government receiving it, no matter how vigilant, would be unavoidably deceived by such conduct, the defence could not prevail. The decisions in the cases of *State* v. *Peck*, 53 *Maine* 284; *State* v. *Pepper*, 31 *Indiana* 76, and *Millett* v. *Parker*, 2 *Metc.* (*Ky.*) 608, are to the same effect.

From this explication it will be noted that the cases in this train proceed on the ground, not of a denial that a deed may be delivered by a surety in escrow to the principal obligor, but that an estoppel *in pais* may arise from the position of the circumstances; the consequence therefore is, that the principle thus introduced does not obtain unless the recipient of the bond is so situated as almost unavoidably to be misled, by the appearance of things, into the belief that the obligor in making delivery has the legal power to do such act. If there is in the affair anything to put him on his guard, as, for example, the indications on the face of such a bond as is now under consideration, which has not been executed by all the persons named in its body as obligors, the rule does not become applicable. Inasmuch, however, as the bond in the present case was not delivered by the sureties through any intermediate agency, but by their own hands, this doctrine of estoppel is not pertinent, and was alluded to only to avoid mistake with respect to the extent of the general rule that the co-obligor may hold the deed in escrow in behalf of the sureties.

As the surrogate received this bond from the sureties them-

selves, the only inquiry under the present head is, as to the legal status of that officer in an affair of this kind. Does he stand sufficiently aside of the obligation, so as to be capable of taking, for the benefit of the sureties, the bond in escrow; or does he, in its reception, represent, *simpliciter*, the obligee? Can this officer in such a matter be the agent of the surety, as well as the agent of the surrogate-general?

My consideration of the subject has led me to the conclusion that the county surrogate is in this respect the agent of the Ordinary alone, who is the obligee in the instrument. The procedure comprising the making of these bonds is this: a petition is presented to the Orphans' Court, praying for the appointment of a person nominated as guardian, and offering to have executed a bond with certain named sureties; the court assenting, a bond is prepared and given to the surrogate, who presents it to the court for approval, and, upon being passed, files it in his office. In form, the bond is between the guardian and his sureties of the one part, and the Ordinary, or surrogate-general, of the other.

It is thus evident that unless the tradition of these bonds to the county surrogate be a tradition in law to the surrogate-general, they are not, in point of fact, passed to him at all. It seems to me, therefore, that the county surrogate is, in this matter, the representative of his superior officer, and that therein his entire function consists in a right to accept a delivery of the bond. He has no authority to do more than this; he is not empowered to make any terms, or to assent to any conditions, in behalf of his principal; and being a public officer, the extent of his ability is known to all persons dealing with him. The receipt of the bond on the part of the surrogate is a mere ministerial act, and in doing it he is the deputy of the Ordinary. It is, too, an official act, and, being a public officer, he cannot in such a transaction be the agent of an individual. In short, in my judgment, the surrogate-general receives this bond from these obligors by the hand of his subordinate, and, in point of law, the transaction consists of a delivery of the instrument to the obligee.

This being the situation, I think it follows unavoidably that this defence is invalid, for a deed cannot be delivered in escrow to the grantee, or obligee. Authorities may be found that deny, or question, this proposition, but I see not the least ground for saying that it has not always been one of the admitted canons of the common law. I am not aware that any English judge has ever doubted the prevalence of the rule. The doctrine is stated as established law, both in the Touchstone and in the Institutes of Lord Coke. In the former of these authoritative works the principle is stated in these plain words : " The delivery of a deed as an escrow is said to be where one doth make and seal a deed and deliver it unto *a stranger* until certain conditions be performed, and then to be delivered to him to whom the deed is made, to take effect as his deed." And again, in a subsequent passage, this master of the common law says : " So it must be delivered to a stranger ; for if I seal my deed and deliver it to the *party himself, to whom it is made as an escrow* upon certain conditions, &c., in this case let the form of the words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently, and the party is not bound to perform the conditions ; for *in traditionibus chartarum non quod dictum, sed quod factum, est inspicitur." Shep. Touch.* 58, 59. And prior to this authority we find the same doctrine stated as settled law in the treatise of Perkins (p. 61), which Lord Coke, in the preface to volume X. of his reports, tells us was " wittily and learnedly composed and published " in the reign of Edward VI. There are also a number of references to the doctrine in the Year Books. 14 *Hen. VIII., p.* 28 ; 18 *Hen. VI., p.* 42. And the following references will serve to show how extensively the existence of this legal rule has been recognized both by the English and American courts : *Co. Litt.* 36 ; *Thoroughgood's case,* 9 *Rep.* 137 ; *Whyddon's case, Cro. Eliz.* 520 ; *Blunden* v. *Wood, Cro. Jac.* 85 ; *Holford* v. *Parker, Hob.* 246 ; *Bushell* v. *Pasmore,* 6 *Mod.* 218 ; *T. Moore* 642 ; *Foley* v. *Cowgill,* 5 *Blackf.* 18 ; *Gilbert* v. *N. Amer. Ins. Co.,* 23 *Wend.* 43 ; *Den* v. *Partee,*

2 *Dev. & Bat.* 530; *Simonton's Estate,* 4 *Watts* 180; *State Bank* v. *Chetwood,* 3 *Halst.* 1.

With respect to the authorities cited in the well-considered and learned brief of the counsel of the defendants, it is to be observed that most of them relate to cases in which the impeached instrument had been delivered on condition to a co-obligor or to a third party; and it will be found that in most of these decisions it is incidentally admitted that such a delivery cannot be made to an obligee. An exception to such current of authority is certainly to be found in the remarks of Judge Campbell, in the case of *People* v. *Bostwick,* 32 *N. Y.* 445, to the effect that the rule that a deed cannot be delivered as an escrow to the party who takes the interest under it, has application only to the case of a deed of conveyance, and that it is such a deed alone that cannot be delivered to the grantee on condition, the reason being that in such case the estate vests, "which cannot be divested except by due process of law or by the voluntary execution of a deed by the grantee;" but there seems to be no reason to believe that this novel view was the ground on which the decision of the court was rested, for Chief Justice Denio, in the expression of his conclusions, without noticing the theory of his learned colleague, adheres to the accepted doctrine, and says, "certain principles are very well established; where a deed is delivered to a party who is the *obligee or covenantee,* it is impossible to annex a condition to such delivery." Nor is it easy to understand why the grantee in a deed cannot receive such deed in escrow, if he can hold a bond under such circumstances, because, granting the capacity to become the depositary of an escrow, it seems clear that by the conditional delivery of a conveyance to him the estate would not vest until the performance of the condition, any more than it would if such delivery were to a third person. But, independent of such considerations, it seems to me quite out of the question, at this late day, to sanction a suggestion that stands in opposition to so much authority from the epoch of the Year Books to the present time.

I conclude, then, under this first head, that the deed in question was delivered, in legal contemplation, to the obligee in person, and that, consequently, it was not possible to attach any condition to such an act.    Nor do I think that in answer to this it will suffice to urge, as is urged, that the delivery was not complete, because such a contention is obviously in the face of the facts.    These sureties left this instrument in a completed form, so far as they themselves were concerned, with the surrogate, and they were to do no other act in regard to it; and, consequently, if the deed was not then delivered by them, they had no intention to deliver it.    The true theory is, that a deed is delivered whenever it is intended that it shall go into effect by virtue of such delivery, without further act on the part of the party making the transfer.    For the purpose of this part of the inquisition, I assume that these sureties delivered this instrument to the surrogate, intending to deliver it, as they say, as an escrow, and using words expressive of such purpose; and from these premises I have concluded that the bond, by force of an imperative rule of law, passed to the obligee, detached from all extraneous conditions.    The bond cannot, notwithstanding such expressed conditions, be treated as an escrow in the hands of such obligee.

In order to estimate fully the force of this position, it is necessary to bear in mind that the deed in question was, with respect to its legal effect, a perfect deed, so far forth as the defendants were concerned.    The deed, it is true, nominated in its premises another person as an obligor, besides the parties signing in that capacity, but this did not make it less the finished act of those who did execute it.    No one will pretend that if the signers of this deed had delivered it to the surrogate in its present state, without annexing any condition to its tradition, that it would not have been binding in law.    The decisions are uniform and numerous to that effect.    The fact of the absence of the signature of a party named has no legal significance, except that it may, as a circumstance, tend to confirm, in a proper case, the contention that the deed was deliv-

ered in escrow, or may serve to put an obligee on his guard when he receives the instrument from the hands of the principal obligor, or of a third party, as to the authority of such agent to make delivery to him. In all other respects, the fact that the deed has not been signed by some of the persons named in it as obligors cannot impair the obligatory force of the specialty with regard to the persons executing it.

Before leaving the subject, I also remark that the rule which is above applied in this case is not, in my judgment, by any means a merely technical one. To the contrary, I regard it as a wise regulation, founded in public utility, and conducing greatly to the security of persons desirous of executing contracts in a definite and assured form. The law reasonably provides that the instrument delivered shall be conclusive, with respect to its contents, as to the intention of the parties to it; and in the same manner, and in view of the same considerations, the act of delivering the instrument should be equally conclusive. The danger to be apprehended from fraud and false swearing, as well as from the infirmity of human memory, would be as great in the one case as in the other. If a condition could be annexed to a delivery of a deed when made to the obligee himself, the very essence of the transaction would be left to depend on the memory and truth of the bystanders. I cannot but think that there is manifest wisdom in the old rule, that the law will regard in such transactions not what is said but what is done. Nor does it seem to me that such rule is ever, in any of its manifold applications, of more worth than when it is employed as a safeguard to persons who are of necessity represented by public officers. It must strike everyone as a most alarming idea, that any of the numerous bonds that are given to surrogates and clerks can be defeated if it can be made to appear, by parol, that any of the parties executing and delivering such instruments stated to such officers receiving it that it was to be inefficacious unless upon the happening of some event. This present case would afford a fair illustration of the practical operation of such a pernicious principle. These parties themselves deliv-

ered this instrument into the hands of the surrogate, as a security of the estate of this infant; the surrogate, after it had been duly approved by the court, filed it in his office; and now after the lapse of many years, when it becomes necessary to resort to it, the property of the minor having been wasted by the guardian, the endeavor is to explode the entire transaction by showing, by the oaths of the parties interested, that the instrument is a nullity, as it was delivered subject to a condition that has not been fulfilled. In my judgment, law and public policy are in accord on this subject, both declaring that such a defence cannot prevail.

There is a second aspect of this case, but which also appears to me equally unfavorable to the pretensions of these defendants, for, on the assumption of the capability of the surrogate to receive a bond in escrow, I think it plain that the legal inference from the facts found by this special verdict must be that no such delivery was, in point of fact, made.

In disposing of this point, I premise that I admit, to its full extent, the rule of exposition that was adopted in the case of Evans v. State Bank, and which was reiterated in Lamb v. Shreve, that the question whether any given delivery is conditional or not, is to be decided, not, as was at one time supposed, by a mere form of words or turn of expression, but from the intention of the parties, as manifested by their language and acts. As Chancellor Sugden said, in the case of *Nash* v. *Flyn*, 1 *Jones & La Touche.* 162, "now it is quite settled that it is not necessary, in delivering an instrument as an escrow, to say that it is delivered as an escrow. I have always considered it as a clear point, that if the instrument be delivered upon condition, that constitutes an escrow." This is undoubtedly the reasonable and modern rule of construction applicable to these transactions. Nevertheless, in handling this question at the present time, there are two considerations which we must carry with us, the first being that we have to do with a special verdict, and, in the second place, that we must find, in order to make the defence available, that the delivery was conditioned with a stipulation that the instru-

ment should not go into effect unless a certain act should be performed.

This verdict has not found the point, that the transfer of the deed was subject to any terms ; all that it does is to ascertain certain facts, and the inquiry, therefore, is as to the legal value and effect of such facts.   In the exposition of findings of this character, the rule is that when the facts found are of such a nature that clear conclusions can be drawn from them, it is no objection to the finding that the jurors themselves have not drawn such conclusions and stated them as facts. This is the theory denoted by Chief Justice Dallas, in *Monkhouse* v. *Hay*, 8 *Price* 256, and is in accordance with the practice in such cases as appears from Mr. Tidd's Manual, page 897.   If the circumstances presented have so uncertain a tendency as to leave the mind in doubt as to their legal effect, then indeed the court cannot make any deduction. Bearing in mind, then, the two-fold office to be performed, viz., that a conditional delivery must be found, and that only necessary conclusions are to be deduced from established facts, I will turn to the merits of this case as they are spread upon this record.

The circumstances touching the execution of this bond are these :

Lucy C. Wilson was a minor, under the age of fourteen years, and her mother petitioned the Orphans' Court of the county of Hunterdon to appoint Robert Thatcher her guardian, offering John B. Alpaugh, Jacob Thatcher and William S. Riley as sureties on his bond. This petition being approved, a bond was, according to the practice, conformably drawn by the surrogate in the names of the guardian and his three proffered sureties.   The record then narrates the occurrences touching the execution and delivery of this instrument, in these words, to wit:

" And that on the said 20th day of March, 1868, the said Robert Thatcher and William S. Riley went into the said surrogate's office for the purpose of signing said bond, when the said bond was read over to them by the said surrogate, and

the contents thereof made known to them; that thereupon the said Robert Thatcher and William S. Riley signed the said bond, in the presence of the said surrogate, and that immediately after the said William S. Riley and Robert Thatcher had signed the said bond, the said William S. Riley, in the presence of the surrogate, said to the said Robert Thatcher, 'Now you bring in the other parties, and see that they sign the bond,' and that the said surrogate then and there also said something to the said Robert Thatcher, in the presence and hearing of the said William S. Riley, about his bringing in the other parties to sign said bond; and at that time the said William S. Riley knew that Joseph C. Smith, who drew the said petition and said bond, and in whose presence he signed the same, was the surrogate of the said county of Hunterdon; and that said bond was then left with said surrogate, in the surrogate's office of the county of Hunterdon; and that on the following day the said Robert Thatcher and the said Jacob Thatcher, mentioned in said bond, went into the said surrogate's office that the said Jacob Thatcher might sign said bond, and that the said surrogate produced said bond and read it over to the said Jacob Thatcher, in the presence of the said Robert Thatcher, whereupon the said Jacob Thatcher signed the same. After the said bond was signed, the surrogate immediately said to the said Robert Thatcher, in the presence and hearing of said Jacob Thatcher, 'Now you send John B. Alpaugh in to sign the bond,' which the said Robert Thatcher promised to do; and that said bond was then left with said surrogate, in the surrogate's office of the county of Hunterdon.

"And that the said bond contained the names of said Robert Thatcher, William S. Riley, Jacob Thatcher and John B. Alpaugh, as they are now written therein, before either of the parties thereto signed the same, and when the same was read over to each one of them, and the contents made known, and that there were affixed thereto by the said surrogate, before the said parties or either of them had signed the same, four seals, as is represented in said copy."

Now this testimony, as I construe it, shows this and nothing more, that both these sureties who signed this bond believed that it would be signed by the third surety, and they had the promise of the principal obligor that he would procure the signature of such third surety. But such belief, founded on such promise, does not manifest or constitute a conditional delivery of the instrument. Neither of these sureties intimated by word or act that in case of the failure of the other party to sign, the bond was to be inefficacious with respect to himself. Whether either of them would have said so if the question had been propounded at the time, is a matter left in the utmost uncertainty. Now each says, and no doubt is fully convinced, that he would not have agreed to execute the obligation without this third party assuming a share of the risk; but who can say confidently that such was his opinion or intention at the time of the transaction? And even if we were satisfied that such at the time was their intention, we must remember that the existence of such intention alone would not absolve them from this obligation, for it must also appear that such intention was manifested to the officer receiving the bond. Was the surrogate then given to understand that unless the third signature was obtained the bond was to be a nullity? In order to conceive clearly the point of inquiry, it is necessary to bear in mind that a promise of the principal obligor to do some act in the future as an inducement to the surety to sign, and the non-fulfillment of such promise, will not in the least degree impair the validity of the obligation delivered in reliance on such promise. To have such effect it is requisite that it should be stipulated that the bond is not to come into existence as an obligation until the performance of such promise. The correct doctrine on this subject is stated perspicuously by the court in the case of *Evans* v. *Gibbs*, 6 *Humph.* 405, in these words: "It is incumbent on him who alleges it [the deed] to be an escrow merely, and not his deed, to prove affirmatively, not that the principal promised something further should be done, by way of inducement to his execution of the instrument, but that the performance of such

further act was the condition upon which he was to become bound, or the instrument to be delivered as his act and deed." In the case in hand, the principal obligor promised the sureties to bring in the third bondsman to sign, but plainly neither of such executing sureties made the performance of that promise the condition on which he was to become bound. To the same purpose is the case of *Cumberlege* v. *Lawson*, 40 *E. L & Eq.* 228, in which the defendant pleaded that "he executed the indenture on the *faith* that P. (one of the sureties) should join therein, and who never did execute it;" the court holding the plea bad, Cresswell, Justice, saying, "The defendant does not say that he never did seal and deliver; nor that he delivered the deed as an escrow, on condition that P. should execute it." And in *Bowker* v. *Burdekin*, 11 *M. & W.* 127, it is similarly obvious that the deed was executed under the influence of the same kind of inducement, because in that case the deed of assignment, in its body, purported to be the deed of three members of a firm, and to convey all their personal estate in trust for creditors; but the contention that the instrument was delivered as an escrow was rejected, Baron Parke remarking: "It seems probable the partners contemplated that the other partners should execute the deed, but, in the meantime, this party has set his seal and delivered the deed as an instrument which conveys all the property he has." That the mere expectation, or well-founded belief, of the party signing, that another party will sign, will not make a delivery by the former conditional on an execution by the latter, appears also from that numerous line of cases in which deeds have been pronounced valid which, upon their face, manifest that it was expected that other parties should sign. *Duncan* v. *United States*, 7 *Pet.* 435, and *Cutter* v. *Whittemore*. 10 *Mass.* 442, are leading cases of that class, and they are founded on the radical distinction which exists between an understanding, cotemporaneous with the delivery of a deed, that something further is to be done as a part of the transaction, and an understanding that the doing of such thing is to be a prerequisite to the legal existence of the instrument.

Chancellor Williamson has clearly discriminated in this respect, in the opinion read by him in the case of *Black* v. *Lamb*, 1 *Beas*. 118, where he says: " There is a manifest difference where the testimony is offered for the purpose of showing that the writing was not to be delivered until a condition precedent was performed, and that it was delivered with an agreement that the condition was to be performed." In the present case, as presented in this record, I can find no facts from which, as a matter of reasonable certainty, an inference can be drawn that there was an understanding that the present bond should have no legal effect until the signature of the third surety should have been obtained. Nor can I think that, in transactions of this kind, if it is to be held that the surrogate can stand as the depositary of an escrow, the law should be satisfied with anything short of the most convincing proof that the transfer of the instrument to the official hand was conditional. It is easy for the party to speak plainly on the subject, if such is his intention, and in an affair involving the estates of persons who, from the immaturity of their minds, are incapable of taking care of their own concerns, he is bound to do so. The passing of an instrument into the possession of the party taking an interest under it, is an act so significant of the right of such recipient to take and enforce it according to its terms, that to control such manifestation, circumstances or expressions amounting almost to demonstration should, in my opinion, in all cases be exacted. There is no reason to believe that if, in the present instance, these defendants had in any intelligible manner intimated to the surrogate that they were not to be bound by this bond until it was executed by the other surety, that it would ever have been made use of or tendered for judicial sanction. The consequence is, that if the matter is left in doubt as to the character of the delivery of this instrument, such doubt should be resolved in favor of the innocent person, to secure whom the bond was given, rather than to the advantage of these defendants, whose carelessness has at all events produced the situation.

The cases cited in the brief of the counsel for the defence have been carefully examined and considered, but most of them appear not to be upon the point where the stress of the case lies, for they relate to the effect of deeds left in the hands of a co-obligor, or of a third party, to be vitalized on the performance of a condition clearly expressed. *Pawling* v. *United States*, 4 *Cranch* 219; *Ward* v. *Churn*, 18 *Grattan* 801, and a large number of others, which are referred to, do not differ in any material degree from that of Evans *v.* State Bank, which rests upon incontestable law. The decision in *Fletcher* v. *Leight*, 4 *Bush* (*Ky.*) 303, is nothing but the exposition of a local statute, and *Clements* v. *Cassilly*, 4 *La. An.* 380, is an offshoot of the civil and not of the common law. The case of *Sharp* v. *United States*, 4 *Watts* 21, is more pertinent, but appears to have been decided upon little consideration, as none of the authorities are referred to, and the decision is put upon a principle that is inconsistent with almost all the authorities upon this subject. With respect to the case of *Evans* v. *Bremridge*, 8 *De G., M. & G.* 100, which seems to have been much relied on, as it is referred to several times, it is a judgment plainly adverse to the defence, as the instrument then in question was admitted to be good at law, as appears by the report of the case in 2 *Kay & Johns.* 174, where Vice Chancellor Wood is recorded as saying: "So here the deed is good at law. Not having delivered the deed upon condition of its being executed by the co-surety, the plaintiff is bound at law to pay the amount; but the question is, what is its effect in equity?" It is true that in that case, which arose on a bill in chancery, relief was afforded founded on grounds that do not seem to be present on this occasion; but with such equities, it is obvious, at this time we have no concern.

With respect also to the fact adverted to by counsel, that this bond was executed in view of the order of the Orphans' Court sanctioning a bond by three named sureties, it does not appear to me to be a circumstance having any legal force. The court certainly, by reason of such direction, was not precluded

from changing its purpose, or from accepting a bond signed by a lesser number of sureties; nor could the existence of such original order qualify in any measure the act of these defendants in making delivery of this instrument; such order, as part of the transaction, may indeed tend to show what they expected would be done, but it does not help to explain what in point of fact they themselves did.

I think the plaintiff is entitled to judgment on this special verdict.