**In re ARROW MILL DEVELOPMENT CORPORATION, Debtor.**

**ARROW MILL DEVELOPMENT CORPORATION, Plaintiff,**

**v.**

**SHOPRITE OF CLINTON, Defendant.**

**Bankruptcy No. 93–37013.**
**Adv. No. 94–3051.**

United States Bankruptcy Court,
D. New Jersey.

Aug. 11, 1995.

Shapiro & Shapiro, Robert P. Shapiro, Hackensack, NJ, for plaintiff/debtor Arrow Mill Development Corp.

Pennington & Thompson, P.C., Louis G. Rubino, Cherry Hill, NJ, for defendant ShopRite of Clinton, Inc.

## OPINION

### WILLIAM H. GINDIN, Chief Judge.

### *PROCEDURAL BACKGROUND*

This matter comes before the court as an adversary proceeding to compel defendant ShopRite of Clinton, Inc. ("ShopRite") to turn over the proceeds of an escrow account pursuant to 11 U.S.C. § 541. At issue in the proceeding is the ownership of the escrow account which was created and funded by ShopRite. Plaintiff/debtor-in-possession Arrow Mill Development Corporation ("Arrow Mill" or "debtor") contends that the escrow account, which is maintained by debtor's counsel, constitutes property of the debtor's estate. Defendant claims that the escrowed funds have never belonged to the debtor. Each party seeks immediate turnover of the disputed account.

This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (F), (H) and (K).

### *FACTS*

On January 6, 1989, ShopRite and Arrow Mill entered into a lease pursuant to which Arrow Mill was to build a shopping center in which ShopRite would be the anchor tenant. ShopRite has operated its business there since the development's completion. During construction of the building, a dispute arose between the parties as to the amount of space ShopRite actually occupied (and upon which rent would be calculated). Debtor contended that ShopRite occupied 43,518.18 square feet of space, while ShopRite stated that it leased 40,730.1 square feet.

In June 1990, debtor instituted an arbitration proceeding seeking a determination of the rental square footage issue as well as several other issues which had arisen during construction of the building. After considerable correspondence, it was agreed between the parties that ShopRite would make payments into two separate accounts during the pendency of the arbitration. Rent payments for the undisputed amount of the space occupied by ShopRite were paid directly to Arrow Mill. Funds covering the disputed rental area were sent to a separate "escrow account" maintained by Giordano, Halleran & Ciesla ("GH & C"), debtor's former counsel. Although there was no formal escrow agreement between debtor and ShopRite, attorneys for the respective parties always referred to the payments made to the GH & C account with references such as funds to be held "pending resolution of the arbitration proceeding," "[the] escrow holding account pending resolution of the arbitration," "[funds] being forwarded to you for deposit in trust pending resolution of the arbitration," and other similar phrasings. (Defendant's Ex. D–3 through D–12).

The arbitrator rendered his decision on May 7, 1993 and entered an award on May 11, 1993. The relevant section of the arbitration award provides:

C. Determination of square footage: Rent shall be paid on 40,940.76 square feet, as of the first of the month next following the date of this award, *with no adjustment for payments made on the basis of a different square footage prior to this date.* The denominator of the Tenant's Fraction is 54,264.39 square feet, to take effect as of the first of the month following the date of this award, *with no adjustment for a fraction based on a different square footage prior to such date.* (Emphasis added).

After the arbitrator's award was entered, ShopRite filed an action in New Jersey Superior Court to confirm the award. Throughout the arbitration and superior court case, Arrow Mill advocated its belief that the GH & C account was an ordinary escrow account. On September 10, 1993, the superior court ruled that the arbitrator's award would be confirmed. A judgment reflecting its ruling was entered on November 4, 1993. Among other things, the order entered judgment in favor of ShopRite for the funds in the GH &

C account based on the arbitrator's square footage determination.

Debtor filed its bankruptcy petition on November 22, 1993. On February 7, 1994, Arrow Mill filed an adversary complaint in the bankruptcy court to determine ownership of the funds in the GH & C account. Cross-motions for summary judgment in the adversary proceeding were filed by ShopRite and debtor. Following oral argument on September 1, 1994, the bankruptcy court ruled that the debtor was entitled to the funds in the escrow account. ShopRite appealed the decision to the district court.

On October 24, 1994, the district court entered an opinion and order ("Thompson Opinion"), *ShopRite of Clinton, Inc. v. Arrow Mill Development Corp.*, No. 94–4796 (D.N.J. filed Oct. 24, 1994), which vacated the bankruptcy court's order of September 21, 1994. The district court found specifically that:

1) Arrow Mill should not have been granted summary judgment because several questions of fact remained to be resolved at the time of the bankruptcy court decision;

2) Contrary to ShopRite's assertions, the superior court's order does not invoke the protection of *res judicata* or collateral estoppel as to the factual issues now before the court. "[T]he bankruptcy court is not bound by the superior court's decision in considering the nature of the GH & C account on remand." (Thompson Opinion at 9)[1]

The case was remanded to the bankruptcy court for further proceedings consistent with the district court opinion. Following entry of the district court's order, the parties agreed to have the trial heard on the submissions. Proposed findings of fact and conclusions of law were filed by the parties. After review of the submissions and the facts of the case, this court finds that the escrowed funds are not property of the debtor's estate.

---

**1.** Chief Judge Thompson found that the superior court opinion and order were inconsistent and conflicted with the arbitration award. Judge

## DISCUSSION

### A. Nature of the Account

As this case has been remanded by the district court, this court is bound by the district court's findings in its appellate capacity. *In re Huderson*, 96 B.R. 541, 548 (Bankr.E.D.Pa.1989); *see also Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833–34 (9th Cir.1982) (decision and contents of the Order and the Opinion of an appellate court are the "law of the case" upon remand to the lower court) and *Cherokee Nation v. Oklahoma*, 461 F.2d 674, 677–78 (10th Cir.1972), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (same).

One primary issue is raised on remand: whether the escrow account constitutes property of the debtor's estate pursuant to 11 U.S.C. § 541(a). As instructed by the district court, "the debtor's equitable or legal interest in the GH & C account depends on whether ShopRite's payments into that account are characterized as (1) rent payments to the debtor which were to be returned to the extent required by the arbitration or (2) money to be held in escrow awaiting the conclusion of the arbitration." (Thompson Opinion at 5)

### B. Property of the Estate and Escrow

■ Debtor seeks a declaration that the escrow funds are property of the estate pursuant to 11 U.S.C. § 541 and should therefore be released to the estate for distribution to creditors. Section 541(a)(1) of the Bankruptcy Code provides that the estate is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." As acknowledged by the Supreme Court in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the statute is broad and pervasive in scope. In that same case, however, the Court was careful to point out that not all property in which the debtor held an interest was meant by the legislature to be included in the expansive reach of § 541. "[Congress] intended to exclude from the estate property of others in which the debtor

---

Thompson thus directed the bankruptcy court to the arbitration award. *Id.*

had some minor interest such as a lien or bare legal title." *Id.* at 204 n. 8, 103 S.Ct. at 2314 n. 8. The estate's rights are identical to and limited to those held by the debtor. "Whatever rights a debtor had at the commencement of the case continue into bankruptcy—no more, no less." *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir.1984).

■ Because property interests of the debtor are not defined by the Bankruptcy Code, the court must look to state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Like most states, New Jersey follows the general rule that the deposit of property in escrow "creates in the grantee such an equitable interest in property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him. Hence, although pending full performance of the conditions, the legal title remains in the grantor …" 28 Am.Jur.2d *Escrow* § 10 (1964). *See also* 30A C.J.S. *Escrows* § 9 (1965); *accord Zaremba v. Konopka,* 94 N.J.Super. 300, 228 A.2d 91 (Ch.Div.1967) (rule followed in context of real estate transactions); *Craig v. Craig,* 25 N.J.Super. 226, 95 A.2d 767 (Ch.Div.1953) (same); *Gallicchio v. Jarzla,* 18 N.J.Super. 206, 86 A.2d 820 (Ch.Div.1952) (same). Thus if the escrow condition which would have vested title in grantee does not occur, legal and equitable title remain in grantor (here, ShopRite) while grantee (Arrow Mill) is divested of any contingent equitable interest in the property.

■ New Jersey law defines "escrow" as: … when a deed is delivered by the grantor to a stranger, to be delivered to the grantee on the performance of some condition, it is considered an escrow. *White v. Williams,* 3 N.J.Eq. 376 (1836).

■ In New Jersey, the law regarding escrows is both long-standing and clear. First, an escrow may be created by writing or by parol, or partly by both, and upon deposit in escrow, a contract between parties as to delivery of its subject-matter by the depositary is created. *Cooper v. Bergton,* 18 N.J.Super. 272, 87 A.2d 358 (App.Div.1952). Second, the subject instrument must be deposited with an intermediary who is not an agent acting exclusively in interests of and pursuant to authority of one of the parties. *Kamm's Estate v. C.I.R.,* 349 F.2d 953 (3d Cir.1965). The escrowee may be a person who has been or still is the attorney of one of the parties so long as he receives deposit not as the attorney for one of them but as an agent or trustee for both parties. *Mantel v. Landau,* 134 N.J.Eq. 194, 33 Backes 194, 34 A.2d 638, *aff'd.,* 135 N.J.Eq. 456, 34 Backes 456, 39 A.2d 88 (Ch.1943); *see Kelly v. Chinich,* 91 N.J.Eq. 97, 108 A. 372 (1919). Third, transfer of title from the grantor to the grantee does not occur until the happening of the condition or contingency specified by the escrow agreement. *New Jersey State Ordinary v. Thatcher,* 41 N.J.L. 403 (N.J.Sup.Ct.1879).

■ ShopRite asserts that, in light of the above, the fund being held by GH & C is clearly an escrow account. Arrow Mill challenges that conclusion and proposes that the moneys sent to GH & C by ShopRite were "rent payments" covering the rental footage disputed by ShopRite.

Although Arrow Mill is correct that the money deposited by ShopRite represented "the difference in the rentable space calculated by debtor and the rentable space calculated by ShopRite," debtor is incorrect that those sums were not placed in escrow. The GH & C account in question was created following an oral agreement between the parties and memorialized in a series of letters sent from ShopRite's counsel to Arrow Mill's counsel. Throughout the correspondence, the account was characterized as an "escrow holding account pending resolution of the arbitration;" "[funds] being forwarded to you for deposit in trust pending resolution of the arbitration;" and "the trust account which you are maintaining pending resolution of the dispute … regarding amounts due to the landlord under the lease." (Defendant's Ex. D–3 through D–12) The letters and telephone conversations which comprise the "escrow agreement," establish that both parties intended that ShopRite deposits be placed in escrow pending conclusion of arbitration.

Evidence of the parties' intent is further supported by Arrow Mill's prior position concerning the character of the GH & C account.

As noted by the district court, Arrow Mill premised its argument to the superior court "on the assumption that the GH & C account was an ordinary escrow account ... [as] revealed by the fact that it sought to have the arbitrator's award applied retroactively. Retroactive application of the arbitrator's decision would only benefit [Arrow Mill] if the GH & C account were an escrow account." (Thompson Opinion at 9). Arrow Mill's earlier position contrasts markedly with its present argument that the money sent by ShopRite to GH & C was tantamount to payment made directly to debtor. Absent proof to the contrary, it appears that it was the intent of both parties that the ShopRite deposits would create an ordinary escrow account.

The agreement between ShopRite and Arrow Mill intended to, and did, create an escrow account. ShopRite's payments to GH & C were, therefore, "[moneys] to be held in escrow awaiting the conclusion of the arbitration" and *not* "rent payments to the debtor which were to be returned to the extent required by the arbitration." (Thompson Op. at 5). The escrow agreement, as established by the letters and phone conversations, provided that ShopRite would be grantor, debtor would be grantee, and that ShopRite would send the disputed rent checks to the third party escrow agent, GH & C. Under the agreement, the condition to be fulfilled was the "resolution of the arbitration," upon entry of which the escrow was to be disbursed pursuant to the decision of the arbitrator. As stipulated by both parties, the May 11, 1993 arbitration award provided that there was to be "no adjustment for payments made on the basis of a different square footage prior to this date." Thus, the condition which would have vested title in debtor/grantee (a favorable arbitration award allowing for retroactive adjustment) never occurred. To the contrary, the arbitrator found in ShopRite/grantor's favor and its effect is that debtor is not entitled to the escrow account but only to those rental payments made directly by ShopRite to debtor.[2] The contingent interest in the account held

by Arrow Mill was thus extinguished by the arbitration award. Debtor therefore held no interest in the escrow account within the meaning of 11 U.S.C. § 541. Accordingly, the escrow funds are not property of the estate.

This decision comports with the leading case on escrow accounts as property of the estate, *In re Newcomb*, while also giving effect to the intent of the parties to the escrow agreement. *In re Newcomb*, 744 F.2d 621, *reh'g denied*, (8th Cir.1984) (when condition of the escrow agreement was already fulfilled at the time bankruptcy petition was filed, debtor had no remaining interest in the escrow funds). The parties' agreement outside of bankruptcy produces the same result in bankruptcy. The GH & C account was to be distributed according to the arbitration award. Arrow Mill thus received exactly that to which it is entitled.

Debtor argues in the alternative that the GH & C account could not be an escrow account because GH & C was simultaneously serving as debtor's counsel. Debtor's contention ignores well settled state law. "[A]bsent some extraordinary provision, absent here, it is a matter of elementary law that when two parties to a transaction select the attorney of one of them to act as the depositary of funds relevant to that transaction, the attorney receives the deposit as the agent or trustee for both parties." *In the Matter of Anton J. Hollendonner*, 102 N.J. 21, 28, 504 A.2d 1174 (1985) (quoting *Mantel*, 134 N.J.Eq. at 195, 34 A.2d 638); *see also Mathis v. Yarak*, 71 N.J.Super. 234, 238, 176 A.2d 794 (App.Div.1961). GH & C's other position as debtor's agent did not prevent the firm from acting as an escrowee for both parties.

C. Supplemental Claims

The debtor has advanced three additional arguments:

1) ShopRite has no perfected state law security interest in the funds;

---

**2.** It should be noted that the arbitrator only had knowledge of the payments made directly to debtor and not of those payments made into escrow. Thus the statement that there be no

adjustments for prior "payments" was intended to include only "payments" made directly to Arrow Mill, and not "payments" made into escrow.

2) The state court order is a preference and/or a fraudulent transfer of debtor's property which is voidable under 11 U.S.C. § 547 (1978) and 11 U.S.C. § 548 (1984); and

3) ShopRite's interest in the funds is subordinate to the debtor's status under 11 U.S.C. § 544.

None of these positions is persuasive.

### 1. Perfected security interest

 Debtor states: (a) because the escrow money is being held by GH & C, ShopRite does not have possession of the collateral and therefore cannot hold a perfected security interest and (b) GH & C cannot be a bailee for ShopRite because the firm also serves as an agent of the debtor. In support of this position, debtor cites the commentary to N.J.S.A. 12A:9–305 [3] and *In the Matter of R. Van Kylen*, 98 B.R. 455 (Bankr.W.D.Wis.1989) (in order to qualify as bailee, the party in possession may not serve as the agent for both the debtor and the secured party).

This court finds debtor's position without merit for two reasons. First, the Uniform Commercial Code does not apply to this case, but rather applies only to a creditor's perfection of its interest in another party's property. *In re Copeland*, 531 F.2d 1195 (3d Cir. 1976). Here, ShopRite was the grantor and therefore held legal title to the funds subject to divestment upon fulfillment of the escrow condition. Because ShopRite possessed legal title, it was not a creditor and consequently not required to perfect its interest under the U.C.C.[4] Second, even if the U.C.C. were applicable, debtor is simply incorrect about the prohibition against attorneys serving in a dual capacity of escrowee and bailee. *See In the Matter of Hollendonner*, 102 N.J. at 28, 504 A.2d 1174.

 Contrary to debtor's assertions, an escrow agent serving both parties can indeed qualify as a bailee/agent under § 9–305 [5]. The general rule is:

> When the condition on which the instrument is to take effect is performed, the nature of the dual agency changes and the depositary or escrow holder becomes mere agent or trustee for each party with respect to the things in escrow to which each has become completely entitled, and his possession is equivalent to possession by such party. *Welch v. T.W. Warner Co.*, 47 F.2d 231, *aff'd*, 47 F.2d 232 (S.D.N.Y.1930). *See* 30A C.J.S. § 10 *Escrows.*

This has been followed in the Third Circuit and elaborated in the leading case on the issue, *In re Copeland*, 531 F.2d 1195 (3d Cir.1976) (an escrow agent, acting for the benefit of both parties, was a "bailee with notice" within the meaning of § 9–305 in that his possession perfected the creditor's security interest; the purpose of the § 9–305 perfection requirement is to give notice to all current and potential creditors that the property was being used as collateral and could not be repledged). That court concluded that possession by an escrow agent who is not under the sole control of the debtor fulfills the notice function and is therefore a "bailee with notice" under § 9–305. *Id.* at 1204.

### 2. State court order as a voidable preference and/or fraudulent transfer

 Arrow Mill also argues that the superior court order of October 25, 1993, which permitted the transfer of funds out of the escrow account, is a voidable transfer under 11 U.S.C. §§ 547 or 548. As directed by the district court, this court is not bound by the state court decision. Furthermore, even if the state court order were applicable, it was never implemented because the money was never transferred out of the escrow account. In light of the holdings above which rely upon the arbitration award and *not* the supe-

---

3. UCC Official Comment No. 2 to N.J.S.A. 12A:9–305 states:

 Possession may be by the secured party himself or by an agent on his behalf; it is of course clear, however, that the debtor or a person controlled by him cannot qualify as such an agent for the secured party.

4. Section 9–305 would apply, for instance, to an attempt by a creditor of ShopRite to perfect a security interest in the escrow account.

5. Section 9–305 provides that, "a security interest in ... money ... may only be perfected by the secured party's taking possession of the collateral."

rior court order, debtor's argument, premised on implementation of the state court order, cannot prevail.[6]

Even if the court assumes, *arguendo*, that debtor's argument has not been rendered moot, this court finds that there have been no preferences or avoidable transfers.

Section 547(b) of the Bankruptcy Code permits a debtor-in-possession to avoid "preferences" made within 90 days prior to the commencement of a case under title 11.[7] Section 548 permits the avoidance of fraudulent transfers of debtor's interest in property up to one year prior to the filing of debtor's bankruptcy petition.[8]

Debtor's § 547(b) preferential transfer argument fails on several grounds. First, the "transfer" of Arrow Mill's contingent interest in the escrow transpired more than 90 days before debtor filed a petition in bankruptcy.[9] As discussed above, the instant the arbitration award was entered on May 11, 1993, debtor's contingent interest in the escrow account was extinguished. When Arrow Mill filed its petition on November 22, 1993, debtor was well outside of the statute's 90 day preference period. Second, debtor has made no showing that the transfer was made "on account of an antecedent debt owed by the debtor.[10] The mere assertion of such in debtor's brief does not make it so. Finally, the transfer did not enable ShopRite to receive more than it would have "if the case were a case under Chapter 7, the transfer had not been made and such creditor received payment of such debt to the extent provided by ... the Code." Once the arbitration award was issued, debtor's contingent interest in the account became worthless. This was long before the filing of the petition. Additionally, in order for a transfer to be voidable, the estate must be diminished as a result of that action. *In re Newcomb*, 744 F.2d at 627. Because the estate lost nothing of value, it did not receive less than it was due. Both debtor and ShopRite received only that to which they were entitled—no more and no less.

■ Arrow Mill likewise fails to satisfy the fraudulent transfer provisions of § 548. Although the transfer clearly occurred within one year prior to debtor's bankruptcy filing, § 548(a)(2)(A) requires that the debtor "[r]eceived less than a reasonably equivalent value." As set forth above, debtor's interest was worth nothing and that is precisely what debtor received.

---

6. Debtor argues that "[t]he issuance of the May 1993 Arbitration Award was not a transfer under the Code because the award did not in any respect address the funds held by GH & C ... As is acknowledged by ShopRite, the arbitrators were not even aware that ShopRite had paid rent which it disputed to GH & C and Debtor's prior arbitration counsel." (Debtor's br. at 10). While it is true that the escrow account was not an issue placed before the arbitrator, as discussed above, the May 1993 award, by stating that "no adjustment for payments ... prior to this date" were to be made, nevertheless "resolved" the dispute between the parties.

7. Specifically, § 547(b) provides that the debtor-in-possession "may avoid any transfer of an interest of the debtor-in-property" made:
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made on or within 90 days before the date of the filing of the petition;
 (5) that enables such creditor to receive more than such creditor would receive if the case were a case under Chapter 7, the transfer had

not been made and such creditor received payment of such debt to the extent provided by the provisions in this title.

8. As enumerated by that section, fraudulent transfers include:
 (a) ... any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one (1) year before the date of the filing of the petition, if the debtor voluntarily or involuntarily ...
 (2)(A) Received less than a reasonably equivalent value in exchange for such transfer or obligation;
 (2)(B)(i) Was insolvent on the date that such transfer was made or such obligation was incurred or became insolvent as a result of such transfer or obligation;

9. It is arguable whether the termination of the debtor's interest in the escrow was even a "transfer."

10. The construction claim provided in the arbitration award is a separate issue and irrelevant with regard to the escrow account.

### 3. ShopRite's interest is subordinate to that of Debtor

 Arrow Mill's final proposition alleges that pursuant to § 544 of the Code, ShopRite's interest in the escrow account is subordinate to the debtor's. Under that section, the debtor-in-possession is granted the rights and powers of a hypothetical creditor holding a judicial lien. *In re Wiggs,* 87 B.R. 57, 58 (Bankr.S.D.Ill.1988). Characterizing ShopRite as a "non-levying judgment creditor," debtor concludes that under New Jersey law its status as a levying junior judgment creditor gives it a superior claim to the escrow funds.

The court finds this claim without merit. Section 544 is inapplicable because ShopRite is not a creditor asserting its interest against the debtor's property. In the bankruptcy context, a creditor is one who holds a prepetition claim against the debtor. 11 U.S.C. § 101(10). Section 544 provides that the trustee "may avoid any transfer of *property of the debtor ...*" 11 U.S.C. § 544 (emphasis added).[11] It is essential that the lien held by the creditor must be one against property *owned by the debtor.* As discussed above, Arrow Mill lost its equitable interest in the escrow account long before commencement of bankruptcy proceedings. ShopRite, as grantor of the escrow account, has held legal title since the escrow's creation. Once the arbitration was decided, debtor's equitable interest was extinguished and ShopRite regained complete right of possession to the account. Without either an interest upon which to levy or a creditor against whom to compete, debtor has no claim under 11 U.S.C. § 544.

### CONCLUSION

For all of the above reasons, this court finds that pursuant to 11 U.S.C. § 541, the escrow account being maintained by GH & C is the property of ShopRite and *not* property of debtor's estate. Based upon the material facts, ShopRite is entitled to the entirety of the escrow account. Counsel for ShopRite shall submit an appropriate form of order within ten (10) days.

---

11. That section states:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of *property of the debtor* or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; ... (emphasis added).