[Civ. No. 4727.   Third Appellate District.—March 22, 1933.]

J. D. ARMSTRONG et al., Respondents, v. VERAL SCHOENBORN, as Executrix, etc., Appellant.

W. D. Van Nostram, Bruce Wallace and Dryer, Castle & Richards for Appellant.

H. M. Lineman and Mab Copland Lineman for Respondents.

PULLEN, P. J.—Plaintiffs, who are respondents herein, filed a complaint against defendant to impress a trust upon certain moneys in her hands as executrix of the last will and testament of A. L. Schoenborn, deceased. The complaint is in two counts.

In the first cause of action it is alleged that plaintiffs assigned to A. L. Schoenborn, defendant's testator, a note and mortgage of $3,500 for collection, executed by one Taylor. Schoenborn released this mortgage of $3,500 and substituted therefor a new mortgage of $4,000, executed by a man named Walker, who had succeeded to the interest of Taylor in the mortgaged property. Thereafter Schoenborn assigned this substituted note and mortgage of $4,000 to certain parties by the name of Brown. The Browns had theretofore assigned to Schoenborn a note and mortgage of $4,500 and had a credit balance with Schoenborn for that amount at the time of the assignment, and when the assignment was made by Schoenborn of the $4,000 mortgage to them he deducted $4,000 from the Brown account and credited the same to the account of plaintiffs leaving a credit balance on the books in favor of the Browns for $500. Two days after the transaction thus detailed Schoenborn died.

The second cause of action alleges that plaintiffs and respondents purchased from Schoenborn a mortgage for $4,500, known as the Gilman mortgage. No payments by Schoenborn were made to the Armstrongs on account of principal although he had collected a total of $1100 on account thereof—$700 on May 12, 1928, and $400 on February 15, 1929. This money Schoenborn deposited in his bank account, but did not notify plaintiffs of the receipt thereof and continued the payment of interest on the full amount of the note as he had from the beginning of the transaction.

At the date of the death of Schoenborn on April 17, 1929, he had a total of over $14,500 on deposit in his name in various banks; these several banks, however, refused to pay these amounts to the executrix, they claiming to hold all moneys on deposit by reason of obligations of the deceased to them.

The inventory and appraisement on file in the Schoenborn estate show a total appraised value of the estate of deceased of over $550,000, with outstanding mortgages on real property of $185,000, in addition to claims filed against the estate of approximately $500,000. There is no proof nor allegation, however, as to the amount of the claims which may have been allowed against the estate.

The trial court concluded as a matter of law that plaintiffs were entitled to a judgment against the estate of decedent upon both counts upon the theory that the moneys were held in trust and were not assets of the estate, and that plaintiffs were not relegated to the position of general creditors of the estate. From this judgment defendant, as executrix, appeals, and the issues thus presented are before us for determination.

█ The case of *Elizalde* v. *Elizalde,* 137 Cal. 634 [66 Pac. 369, 70 Pac. 861], has thus very appropriately expressed the law, as applicable to the case before us:

"It is, however, contended on behalf of the appellant, that unless the plaintiff could identify the specific trust fund held by the deceased from the general assets of his estate, he can assert only the claim of a creditor, for which he must present his claim for allowance against the estate, and that such identification was not made. In *Lathrop* v. *Bampton,* 31 Cal. 17 [89 Am. Dec. 141], it was said: 'The identity of a trust fund consisting of money may be preserved so long as it may be followed and distinguished from all other funds, not by identifying the individual pieces or coins, but by showing a separate and independent fund or value, readily distinguishable from all other funds.' And again: 'If at the time of his death the defendant's testator was in the possession of the trust fund, or other property into which he may have converted it, and such fund or other property had come into the possession of the defendant, he would have held it upon the same terms as his testator held it.''

This does not mean that the trust fund is to be kept as a separate and independent fund, or in a special account from all other funds of the trustee. In Lewin on Trusts, 894, it is said, in reference to the mingling by the trustee of trust funds with his own: 'It may be said that the trust money has, like water, run into the general mass, and become amalgamated and therefore the *cestui que trust* has no claim. But clearly this cannot be maintained. . . . Though the identical pieces of coin cannot be ascertained, yet, as there is so much belonging to the trust in the general heap, the *cestui que trust* is entitled to take so much out. And again: 'If a trustee pay trust money into a bank to the account of himself, not in any way earmarked with the trust, and also keep private moneys of his own to the same account, the court will disentangle the account and separate the trust from the private moneys, and award the former specifically to the *cestui que trust*.' If the trustee, after so mingling the funds, has drawn therefrom from time to time, it will be presumed that the moneys so drawn were from his own portion of the fund, rather than from the moneys held by him in trust. (*In re Hallett's Estate*, L. R. 13 Ch. Div. 696; *National Bank* v. *Insurance Co.*, 104 U. S. 54 [26 L. Ed. 693]; Lewin on Trusts, 895.) So long as the amount in the fund is greater than the amount of the trust fund it will, in the absence of any showing to the contrary, be presumed to be that held in trust. Whether the moneys are mingled in one account at a bank or are kept together in a strong box of the trustee is immaterial.''

██ Counsel do not dispute the principle of law thus expressed, but it is claimed by appellant that at least two of the findings made by the court are not supported by the evidence. The first finding complained of is, ''That said decedent received and had the full cash value thereof in his bank account and possession at the time of his death. That upon the death of said decedent, said funds which were and are in fact the funds of plaintiff herein came into the possession of the defendant as executrix but not individually and she is now holding and has control of same, as such executrix.''

In support of this finding we summarize briefly portions of testimony relating thereto. Mr. Waddell, the bookkeeper

for the deceased in his lifetime, testified: "Q. Now will you start at the beginning of that transaction and tell us what were the facts?" To which he answered in substance as follows: The $3,500 note which was executed by Percy A. Taylor and wife was reassigned to Mr. Schoenborn on April 1, 1929, by the Armstrongs. The Taylors having sold the property to George W. Walker and wife, they took up that mortgage by executing a new note in the amount of $4,000, payable to Mr. Schoenborn, which was by Mr. Schoenborn assigned to Marian and Ruth Brown on April 15, 1929, which was two days prior to the death of Mr. Schoenborn. On April 15th, Mr. Schoenborn had a note belonging to the Brown sisters which they had assigned to him, and for which they had received a credit on the books of $4,500; no cash had been collected for that. The entry of that transaction shows that it was completed about March 1, 1929. When the Brown sisters purchased the Walker note of $4,000 that amount was deducted from the credit of the Brown sisters and credited to the Armstrongs, leaving a credit balance in favor of the Brown sisters of about $500.

From the foregoing the court had the right to infer that after receiving from them a note and mortgage of $4,500 Schoenborn converted the same to cash and thereupon stated upon his books the transaction as a cash item in favor of the Brown sisters, and that at the time the Walker mortgage of $4,000 was transferred to them, it was so turned over to them in lieu of cash, reducing the amount of their credit by the sum of $3,500 as far as the Armstrongs were concerned, plus the $500 additional amount added to the new Walker mortgage, making a total liquidation of the account to the extent of $4,000, and leaving a credit to the Brown sisters of $500.

In view of the findings the trial court apparently presumed that the entries in the book correctly described the transaction and that all details were fair and regular and that the deceased had in his possession as a trust fund, money resulting from the transaction, and that the proceeds from this transaction to the extent of $3,500 were mingled with the funds of the decedent in his possession, or in his bank account. It appears from the evidence that Schoenborn acquired these various notes secured by mortgages by

assignment; we may assume the ordinary business procedure was followed and although no separate deposits were created in the bank nor any actual transfer of money, still his system of bookkeeping showed credit entries in the proper accounts and there was thereby a transfer in the ownership of the funds on deposit in his name.

Appellant also takes exception to the finding of the court with reference to the $1100 connected by the testator on the principal of the Gilman mortgage, in that the court found that upon the testator's death that sum was thereupon taken over and into possession of the defendant herein in her capacity as executrix and that she now holds possession of, and has control of, the same as such executrix. This finds support in the stipulation of counsel that the inventory and appraisement filed in the estate shows the moneys on hand at the time of death which also represent the moneys that came into the hands of the appellant as executrix. The deposits of these amounts were definitely traced into the bank account of Schoenborn.

There is no evidence in the case which shows what, if any, claims have been allowed against the estate, and there is therefore no evidence to support the contention of appellant that the estate is insolvent, but the court properly found that the estate was solvent, and under the rule as cited in the Elizalde case, *supra,* the amount on deposit being greater than the amount of the trust fund will, in the absence of any showing to the contrary, be presumed to be the money held in trust.

Appellant quotes certain testimony of the executrix that no money has come into her hands as such executrix, but the funds are being held by the various banks for claims against the estate. No suits have been filed, however, to determine the right of the banks to so hold these funds, nor have any claims been allowed in their favor. Neither does the fact that it appears from the inventory that the money on deposit was "subject to claim of said bank as to the above fund", do more than evidence the existence of an unliquidated claim.

Objections are made to certain other findings upon the ground they are conflicting, but the law directs all findings to be read together, and if possible to reconcile and har-

monize any conflict. With that in view we do not find any conflicts that are incapable of being harmonized.

For the foregoing reasons the judgment is affirmed.

Plummer, J., and Thompson J., concurred.