[Civ. No. 3999.   Fourth Dist.   Sept. 11, 1950.]

CLYDE MAJORS et al., Respondents, v. MITTIE L. BUTLER, Appellant.

Ruel Liggett and Burton D. Wood for Appellant.

Hunter M. Muir and Henry F. Walker for Respondents.

BARNARD, P. J.—This is an appeal from a judgment quieting the plaintiffs' title and denying any relief to the defendant. The plaintiffs listed a house with a realtor who sold it to the defendant for $4,500. On July 12, 1946, an escrow was opened in the office of a title company, the plaintiffs depositing a deed and the defendant $4,500. The instructions provided that the company was to use these provided it was able to issue within 30 days a policy showing title vested in the defendant; that the realtor's commission was then to be paid; and that the plaintiffs agreed to furnish any other "instruments" necessary to show good title. They further provided that if such a policy could not be issued within 30 days the escrow was to be completed "at the earliest possible date thereafter," unless written demand for a return of deposits was made; and that no "demand shall be of any effect without joint consent in writing" of both sellers and buyer.

With the acquiescence of the plaintiffs the defendant took possession of the property which she has since occupied and improved as a home. Shortly after the escrow was opened the title company discovered that an old contract to sell the property to one Ellis had been recorded but never released. It informed the plaintiffs, who brought an action to quiet their title on October 22, 1946, publication of summons being commenced on November 2, 1946. The record discloses nothing further in that action until after the present action was filed. A substitution of attorneys was made on April 9, 1948, and a decree quieting their title against Ellis was entered on August 13, 1948.

This title company was adjudged a bankrupt and a trustee appointed on January 7, 1948. On January 8, 1948, while

the doors were open and the trustee's agent in charge, the realtor took Mrs. Butler to the office where she signed a change in her instructions by which she would accept title subject to the old Ellis contract, and the "chief searcher" recorded the deed to her. On January 21, 1948, at the request of the trustee's agent, she signed a quitclaim deed and a letter, dictated by him, stating that it was delivered to place the escrow *in statu quo*, without waiving any of her rights, and was to be used only if it should later be decided that the deed to her had been improperly recorded.

This action was filed on March 12, 1948. The complaint alleged the creation of the escrow; that the money was to be paid over when a title guarantee could be issued; that none was ever issued; that the title company was adjudged a bankrupt and a trustee placed in charge; that the next day the defendant obtained the deed and caused it to be recorded; that her possession of the deed through her agents was unauthorized, of no legal effect, and without consideration; that the escrow holder is insolvent and all of the $4,500 deposited with it "is nonexistent"; and that the defendant has never had any interest or right in said land. There was no allegation that the plaintiffs had done their part, except for placing a deed in escrow.

So far as material here, the answer admitted the creation of the escrow, the bankruptcy and the obtaining of the deed; alleged that the $4,500 had been fully paid by placing it in escrow at plaintiffs' direction and for their use; and denied that the $4,500 so deposited is nonexistent. It was further alleged that the title to the property was not merchantable because of the recorded Ellis contract; and that any loss or damage resulting from the bankruptcy was caused by the negligence of the plaintiffs in failing to prosecute their action against Ellis with diligence, and thus failing to furnish a title in accordance with their agreement.

The action was tried on July 25, 1949, while the bankruptcy was still pending. In addition to the general facts as to the creation of this escrow, and the bankruptcy, the court found that on July 12, 1946, the plaintiffs delivered to the escrow holder "sufficient deeds of conveyance" to convey title to the defendant; that the escrow was never closed and no title policy was ever issued; that the defendant filed a claim for $4,500 in the bankruptcy proceeding, which she has never withdrawn; that she illegally obtained the deed on January 8, 1948, and its recordation conveyed no right or title to her; that

the escrow holder had commingled the $4,500 in its general account; that these funds could not be traced and were "nonexistent in said escrow" at the time of bankruptcy; and that the loss must fall on the defendant since the escrow holder was her agent. No finding was made on the issue raised as to plaintiffs' negligence.

Some of the findings are either unsupported or fail to reflect the facts shown by the evidence. The finding that the plaintiffs placed in escrow "sufficient deeds—to convey title" is without support if it was intended to mean a good title, as required by the agreement. The defendant did file a claim in the bankruptcy proceeding, at the last minute, but it was conditional and expressly made contingent on an adverse outcome of the present action. A title policy was never issued because the plaintiffs had not cleared their title.

While the escrow holder had placed the $4,500 in its general account, the evidence does not sustain the finding that these funds could not be traced or that they were nonexistent at the time of the bankruptcy. The only evidence is that of the trustee's agent, who had been in charge since January 7, 1948. He testified that such an item could be traced. He also testified that the bank balance was $21,300 on January 7; that the "escrow liability" was then greatly in excess of that amount; and that the last four deposits made probably exceeded that amount. He refused to say the last deposits were escrow money, saying they included all receipts. There is no evidence that these last deposits were escrow money or had not been checked out, and none as to whether other escrow owners were in a position to assert their claims as against the rights of the defendant. So far as the evidence shows, all or some of the money deposited by the defendant may have been available. (*Keeney* v. *Bank of Italy,* 33 Cal.App. 515 [165 P. 735]; *Armstrong* v. *Schoenborn,* 130 Cal.App. 501 [20 P.2d 79].)

While the finding that a deed was illegally obtained may be correct, the evidence in no way justifies any inference that any act of Mrs. Butler in that connection was sufficiently culpable to bar her from equitable relief. It appears without conflict that on January 8 an employee in the title office, then in charge of the trustee, suggested to the realtor that something should be done to close the escrow; that the realtor persuaded Mrs. Butler to change her instructions; that he did this solely because he was the broker; that he did not then know of the bankruptcy, and believed that the escrow could

then be closed and the money paid; that Mrs. Butler merely cooperated with him, knowing nothing of the circumstances; and that she executed a quitclaim deed when informed by the trustee's agent that the transaction was questionable. The evidence indicates that an employee of the trustee acted and delivered the deed in an "attempt to close" the escrow, and that someone later became alarmed. The trustee's agent, who was in charge, testified that the office was closed on January 5 and 6; that up to that time escrows were opened and closed and money paid in the regular way; and that the office was open on January 8 "not to take any new escrows—we ceased to accept new business—but the trustee did continue to attempt to close the business he acquired in the bankruptcy."

The plaintiffs, who were seeking equitable relief, were in effect permitted to withdraw from this escrow contrary to its express terms, when the defendant had fully complied, when they had not done so, and when the escrow could have been completed in ample time had they complied with their part of the agreement, and to do this without a clear showing that the money was entirely lost. The findings clearly indicate that the case was decided solely on the ground that the escrow holder was still the agent of the defendant since a title policy had not been issued.

The general rule that the escrow holder is the agent of both parties until the conditions of the escrow are complied with, and that up to that time any loss of the money caused by such agent must be borne by the one who still owned it, is well established. (*Hildebrand* v. *Beck*, 196 Cal. 141 [236 P. 301, 39 A.L.R. 1076]; *Shreeves* v. *Pearson*, 194 Cal. 699 [230 P. 448].) This general rule is based upon the doctrine that a principal, although not himself at fault, is bound by the acts of his agent. The reason for the rule ceases, and it should not be solely relied on, when the act or negligence of one of the parties is the basic cause of the loss, or is a factor without which the loss would not have happened. In *Crum* v. *City of Los Angeles*, 110 Cal.App. 508 [294 P. 430], such a situation appeared and was held to bring the case within the code provision (Civ. Code, § 3543), that: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

In this case the escrow holder was also the agent of the plaintiffs, and while they are not responsible under the agency rule, they would be under the other rule if by their own negligence they "created a situation which made it possible for the

later loss to occur'' and without which it would not have happened. The issue of negligence, raised by the pleadings, presented an important question of fact which called for a finding on that issue, and the agency finding on which the judgment rests was not necessarily controlling.

There is ample evidence that these plaintiffs were negligent in failing to comply with their agreement to furnish anything necessary to show good title, and to do this within 30 days or ''at the earliest possible date thereafter.'' The time was not indefinitely extended because the defendant did not demand a return of her deposit, as they argue. Her hands were tied and she could make no such demand without their written consent. The only extension was to ''the earliest possible date.'' While this doubtless gave plaintiffs a reasonable time within which to clear their title, it would not justify such an unreasonable delay as seems to have occurred. Plaintiffs' quiet title action against Ellis could have been completed in a few months, apparently. While it was successfully completed within a short time after it was given attention, nothing was done during a period of nearly 15 months preceding the bankruptcy. No reasonable excuse for this delay appears. The mistaken idea that the time for closing the escrow was indefinitely extended, would not be sufficient to excuse the delay. The issue as to plaintiffs' negligence, and its causal effect, was one which could well be controlling and which should have been fully considered, and then decided.

In any event, under these circumstances, the defendant should not in equity be penalized for being unwilling to again pay the full purchase price, before the full facts are known and her rights determined. Assuming that a finding adverse to her on the negligence issue might be made, an interlocutory decree should be entered permitting her to make up any shortage, if she desires, before her rights are completely terminated at the request of the plaintiffs who, whether responsibly negligent or not, are seeking full equitable relief without ever having complied with their agreement.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied October 9, 1950, and respondents' petition for a hearing by the Supreme Court was denied November 9, 1950. Carter, J., and Spence, J., voted for a hearing.