[Civ. No. 117. Fourth Appellate District.—December 17, 1930.]

W. D. CRUM et al., Respondents, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Erwin P. Werner, City Attorney, W. Turney Fox, Assistant City Attorney, and W. B. Mathews, Clarence S. Hill, George T. Warren and Chas. C. Cooper, Jr., for Appellants.

A. H. Swallow and Robert Richards for Respondents.

CARY, P. J.—Plaintiffs began this action to recover from defendants the balance due on the purchase price of certain property. The complaint gave defendants credit for a down payment of $400 and claimed that the balance of $39,837.67 was unpaid. The answer admitted the allegations of the complaint, other than the nonpayment of the purchase price, and set up full payment as an affirmative defense. The court found that the allegations of the complaint were true, except as to the amount still unpaid, gave defendants credit for a further payment of $7,823.99 and gave judgment for plaintiffs for the balance—$32,013.61.

As grounds for reversal, defendants contend (1) that the evidence does not support the finding of nonpayment, (2) that the finding that $7,823.99 was a *pro tanto* payment entitled defendants, as a matter of law, to a further finding that the entire amount had been paid and (3) that the court committed prejudicial error (a) in refusing to find as requested by defendants, that plaintiffs had both authorized and ratified certain acts of their alleged agent in receiving the balance of the purchase price and (b) in refusing to find that plaintiffs are estopped to dispute the authority of their alleged agent in receiving such payment.

Since the major portion of the defendants' argument is based upon their contention that the facts are such that but one construction can be placed upon them—a construction which they claim necessitates a judgment in defendants' favor—it will be necessary to set forth these facts in some detail.

Practically all of the transactions occurred in 1927 so we shall merely give the day and the month, adding the year

only when it is other than 1927. By contract executed February 9th, plaintiffs agreed to sell and the defendant Board of Water and Power Commissioners (hereinafter referred to as the board) agreed to buy certain land in Inyo County, together with rights to the use of water for the price of $40,000. The property was to be free and clear with certain exceptions not material to this discussion. Four hundred dollars of the purchase price was paid plaintiffs when the contract was executed. The balance of $39,600, with interest, was payable when plaintiffs should furnish the board with a certificate of title showing the required title in plaintiffs and deliver to the board a deed conveying such title to the board.

The defendant board had been engaged for some period of time in acquiring an additional water supply in Inyo County. So voluminous were these transactions that the board had stationed one of its attorneys at Bishop, in Inyo County, who devoted his time exclusively to legal matters in connection with the acquisition of such water.

Plaintiffs' land was encumbered with a federal farm loan of something over $7,000 and unless this loan was paid off by April 2d plaintiffs believed they would have to pay another six months' interest. A preliminary title search incident to the sale to the board showed irregularities which would apparently delay the issuance of the certificate for several months. In order to escape paying this additional interest, plaintiffs, during the latter part of March, requested the First National Bank of Bishop (hereinafter referred to as the bank) to loan plaintiffs the money to pay off this farm loan. The bank agreed to do so provided plaintiffs would retain an attorney in Bishop, whom it named, to handle the papers in connection with the deal. This, plaintiffs promptly proceeded to do. This attorney contacted the resident attorney for the defendant board and as a result of this interview plaintiffs, on March 30th, wrote the board's attorney requesting that all matters relating to the sale of the property, together with all payments, be handled through and escrowed with the bank and at the same time plaintiffs executed a deed to the land and delivered it to the bank. On March 31st, the following occurred: The bank delivered this deed to the board's attorney, together with a letter stating in part "This deed is

submitted to you at this time subject to the final payment under contract of purchase and sale, W. D. Crum and Elinor Adell Crum, his wife, in favor of the Board of Water and Power Commissioners of the City of Los Angeles''; the board's attorney delivered to the bank a warrant for $39,837.60 payable to the order of W. D. Crum and Elinor Adell Crum, together with a letter of transmittal, in part as follows: ''You are hereby instructed to hold the enclosed check in your escrow until you receive our written instructions as to the disposal thereof''; a carbon copy of this letter was sent direct to plaintiffs; and the bank immediately sent its cashier's check for $7,823.99 to the Federal Farm Loan Bank holding the mortgage on plaintiffs' land in full payment thereof.

Up to this point there is no complaint from either side as to any unauthorized act of the bank.

Many similar deals between the board and parties other than plaintiffs had been cleared through this bank and the evidence showed it had been the custom of the bank, without consulting the owners of the land, to indorse the owners' names on the warrants, send them through for collection and hold the money until the escrows were closed. There is no evidence that plaintiffs were aware of such custom. Following out this usual custom the bank, instead of obeying the board's instructions to hold the warrant, indorsed it April first as follows: ''Deposited to the credit of W. D. Crum and Elinor Adell Crum. Endorsement guaranteed First National Bank, Bishop, California'' and sent it through for collection. The treasurer of the defendant city, likewise disregarding the instructions that the warrant should be held by the bank, promptly paid it on presentation April 4th. April 8th, the Federal Farm Loan Bank, which held the mortgage on plaintiffs' property, wrote the bank at Bishop inclosing plaintiffs' canceled note and mortgage papers to be delivered to plaintiffs, sent a copy of its letter direct to plaintiffs, wrote the Farm Loan Association inclosing a $400 check to be refunded to the plaintiffs for the purchase price of the Farm Loan Bank stock which plaintiffs had purchased when they secured the loan, and sent a copy of this letter also to plaintiffs. Thereafter, the Farm Loan Association sent its check for the

$400 to plaintiffs which was received by plaintiffs some time between May 11th and 21st.

At all times after the proceeds of the warrant had been received by the bank, the bank was in financial difficulty and its cashier testified that had plaintiffs demanded from the bank the balance of the purchase price, the bank would not have been able to pay the same. August 4th, the bank closed its doors through insolvency. Plaintiffs testified that they believed the money used to pay off their farm loan had been advanced them by the bank and that not until November—long after the failure of the bank—did they know that the Los Angeles City warrant had been cashed by the bank. Not until January 23, 1928, was the certificate of title issued showing good title in plaintiffs and it was then tendered to the board.

It is at once apparent that the vital question in the case is: Upon whom shall the loss, occasioned by the bank's failure, fall?

Defendants contend that plaintiffs had selected the bank as their agent, that plaintiffs, knowing in April that their farm loan had been paid off, were charged with notice that the only method by which it could have been paid was the use of the purchase money represented by the city's warrant, that the bank in cashing the warrant was acting solely as agent for plaintiffs, that plaintiffs in receiving and accepting the $400 returned them by the Farm Loan Association and by accepting the benefit of the seven thousand odd dollars paid to clear off their farm loan had, as a matter of law, thereby ratified the acts of their agent the bank in cashing the warrants. They also contend that plaintiffs, having neglected from April to August 4th to take any action regarding the unauthorized cashing of the warrant and the bank in the meantime having become insolvent and the purchase money thus lost, the plaintiffs are estopped to deny the authority of the bank to cash the warrant. Plaintiffs contend, on the contrary, that they were not entitled to receive the purchase price until they had furnished the board with a proper certificate of title, that prior to such time, even though the bank had, unknown to plaintiff, cashed the warrant, it was holding the proceeds in its capacity as agent for the city, and that since it closed its doors five months before

the certificate of title had been issued entitling plaintiffs to the final payment, the loss should fall upon the city, citing *Hildebrand* v. *Beck,* 196 Cal. 141, 145, 146 [39 A. L. R. 1076, 236 Pac. 301], and *Shreeves* v. *Pearson,* 194 Cal. 699, 707, 708, 711 [230 Pac. 448].

If the property in the custody of the escrow-holder is either embezzled or lost by it, then, as between the seller and the buyer, the loss falls on the one who owns the property at the time of its embezzlement or loss. For example, if the escrow-holder embezzles the purchase· price before the time when, under the terms of the escrow, the seller is entitled to it, the loss falls on the buyer since it is still his money. On the other hand, if the money be embezzled after the time when the seller has become entitled to the money, the loss falls on him since it is now considered his property (*Hildebrand* v. *Beck* and *Shreeves* v. *Pearson, supra*). If this rule be applied to the case at bar the money in the hands of the bank as escrow-holder was lost before plaintiffs became entitled thereto and hence the loss should fall on the defendants whose property it still remained. The defendants contend, however, that the facts do not bring this case within such rule. They argue that in order to create an escrow at all it is essential that the defendants should have relinquished entire control over their property, citing *Fitch* v. *Bunch,* 30 Cal. 208, 212, 213, *Cannon* v. *Handley,* 72 Cal. 133, 139–141 [13 Pac. 315], *McDonald* v. *Huff,* 77 Cal. 279, 282 [19 Pac. 449], *Kenney* v. *Parks,* 125 Cal. 146, 149, 150 [57 Pac. 772], that by its letter of transmittal the defendants specifically directed the bank to hold the warrant until it received written instructions as to its disposal, thereby retaining to themselves control thereof and hence that the principles announced in these two cases do not apply. But the cases cited by defendants were concerned primarily with whether or not the parties to the alleged escrows had so far parted with dominion over deeds to their property that upon the happening of the condition mentioned in the escrow, a delivery thereof would take place. Regardless of whether the facts in the case at bar constitute a true escrow, nevertheless the principles laid down in *Hildebrand* v. *Beck* and *Shreeves* v. *Pearson, supra,* are applicable. When defendants delivered the warrant to the bank with instructions to hold

it until further directions, obviously there was no intent on defendants' part to have the funds represented by the warrant paid over forthwith to the plaintiffs. The only reasonable construction which can be placed upon the letter of transmittal is that the defendants were appointing the bank as their agent to hold the warrant. The next step was the act of the bank in indorsing the warrant: "Deposited to the credit of W. D. Crum and Elinor Adell Crum. Endorsement guaranteed First National Bank, Bishop, California." When the warrant was presented to the city treasurer for payment, an inspection thereof would have shown that the bank was violating defendants' written instructions both in cashing the warrant and in depositing it to the account of the plaintiffs. In spite of that fact the defendants paid the warrant and by their own act thus created a situation which made it possible for the later loss to occur. Under these circumstances the situation comes within the provisions of Civil Code, section 3543—that where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer.

Defendants contend with great earnestness that this court must hold the plaintiffs were chargeable with knowledge of the fact that the bank had both cashed the warrant and used part of the proceeds to pay off plaintiffs' farm loan. They contend that plaintiffs must have known that the only way the farm loan could possibly have been paid off was from the proceeds of the warrant, and that plaintiffs with such knowledge ratified the bank's act by accepting and retaining the benefit of the mortgage payment and the return of their $400 stock subscription. We now proceed to scrutinize the evidence to ascertain what knowledge or notice of the bank's act was chargeable to plaintiffs. Plaintiffs were informed by the bank that it could arrange to pay off the farm loan if plaintiffs would allow a certain attorney to handle the papers. To this plaintiffs agreed. March 30th plaintiffs gave the bank a deed to the property and on the same day wrote a letter to the board's attorney asking that the deal be cleared through the bank. The board's reply to such letter was to mail plaintiffs a copy of the board's letter to the bank dated March 31st which stated that the board was sending the bank the warrant and direct-

ing it to "hold the check in your escrow until you receive our written instructions as to the disposal thereof". Upon receipt of this letter certainly plaintiffs could have no reason to believe that the bank either intended to or could cash the warrant. Now it should be borne in mind that plaintiffs were extremely anxious to have their farm loan paid off by April 2d in order to save paying another six months' interest. It therefore must have been immediately apparent to plaintiffs that the warrant could not be used in time to make such payment. Under date of April 8th plaintiffs received from the Farm Loan Bank of Berkeley a copy of that bank's letter to the First National Bank of Bishop. This letter bore the title "Loan No. 8022. W. D. Crum" and stated in part: "We have received your letter of March *31st* enclosing draft for $7,823.99 which is payment in full of the above numbered loan." Plaintiffs thus knew that the First National Bank had on March 31st forwarded its draft to pay off the farm loan. They also knew that defendants had not sent their warrant to the bank until March 31st, with what amounted to express directions not to cash it. Under these circumstances the inference which the trial court drew that plaintiffs believed that the bank, without cashing the warrant, had advanced its own funds to pay off the plaintiffs' farm loan was a most reasonable one. To a lay mind possessing only the usual limited familiarity with banking practices it would not be an unreasonable assumption under the circumstances that the bank was willing to advance from its own funds sufficient money to pay off the farm loan, relying upon the fact that when the plaintiffs finally received their money from the defendants that money would have to be paid through the bank, which at that time could deduct from the amount it turned over to the plaintiffs an amount sufficient to repay to the bank with interest the sum which it had advanced to pay off the farm loan.

The defendants submitted proposed findings to the effect that plaintiffs had authorized the cashing of the warrant, that plaintiffs had ratified the bank's act in cashing the warrant and that plaintiffs were estopped to deny the bank's authority so to do. Defendants contend that the court's refusal to find on these three matters is reversible error, arguing that while neither ratification nor estoppel

were specifically pleaded in their answer, yet evidence on both subjects was received without objection and therefore must be held to have been one of the issues tried by the court. In support of this contention the defendants cite *Goetz* v. *Goldbaum,* 4 Cal. Unrep. 749 [37 Pac. 646], *Resetar* v. *Leonardi,* 61 Cal. App. 765 [216 Pac. 71], *Cross* v. *Bouck,* 175 Cal. 253 [165 Pac. 702], *McDougald* v. *Hulet,* 132 Cal. 154 [64 Pac. 278], *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 37 [41 L. R. A. (N. S.) 529, 124 Pac. 704], and *Blood* v. *La Serena Land & Water Co.,* 113 Cal. 221 [41 Pac. 1017, 45 Pac. 252]. Regarding the alleged authorization by plaintiffs to the bank to cash the warrant and also the ratification by plaintiffs of such act of the bank, under the plea of payment set up in defendants' answer proof both of the authorization and the ratification was properly within the issues. By the same token a finding by the court of nonpayment—the ultimate fact—covered the fact that there was neither authorization nor ratification.

Regarding the refusal to find on the question of estoppel suffice it to say that there is no evidence in the record upon which a finding of estoppel could have been predicated.

The judgment is affirmed.

Barnard, J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 12, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 9, 1931.