123 So.2d 256 (1960)
Eric CRADOCK, Appellant,
v.
W.R. COOPER and Betty U. Cooper, his wife, Appellees.
No. 1703.
District Court of Appeal of Florida. Second District.
September 21, 1960.
Elwyn L. Middleton of Burns, Middleton, Rogers & Farrell, Palm Beach, for appellant.
Paschal C. Reese and Gibson & Gibson, West Palm Beach, for appellees.
CARLTON, VASSAR B., Associate Judge.
The main facts in this case are not disputed. Defendant Cradock, appellant here, bought certain lands from plaintiffs, Coopers, appellees here. This suit was originated by Coopers, sellers, to establish an equitable lien against those lands for a portion of the purchase price, which was never received. The missing money had been placed in an escrow account and was misappropriated by the escrow holder. From a final decree ordering the loss to be shared equally by both parties, the Defendant-purchaser has appealed.
The selling price for the realty was $80,000, and the transaction was closed in June, 1956. The Internal Revenue Service had a claim which the defendant's attorney, one Charles E. Boland, contended was a lien *257 against the land, and he objected to the title. The sellers' offer to provide title insurance was not accepted; and later both parties agreed to allow Boland, the defendant's attorney, to hold $15,000 of the purchase money under a written escrow agreement. By the terms of this agreement the money would go to the sellers, if the claim were settled; and, if not, it would go first toward settlement of the claim and any remainder to the sellers. The agreement was signed by Charles E. Boland, Attorney at Law, Escrow Agent, Carl Voyles, Agent for Eric Cradock, Betty U. Cooper, W.R. Cooper and W.T. Gibson, Gibson & Gibson, Attorneys for Sellers; and the money was paid to Boland "to be held for and on behalf of W.R. Cooper and Betty U. Cooper, his wife, subject to the following terms and conditions * * *." The terms and conditions briefly were as set out above, that the money would go to the sellers, if the claim was settled; and, if not, it would go first toward the settlement of the claim, and any remainder to the sellers.
The Internal Revenue claim was finally settled, after several extensions of time at the request of plaintiff's attorney; but Charles E. Boland was not able to close out the escrow account because he had misappropriated the balance of the funds, some $10,900. (Boland, for other reasons, now resides at Raiford.) The plaintiffs brought suit against defendant to attach a lien for this amount.
In the final decree the Chancellor states: "There is a question as to whether the escrow agreement creates a true escrow or a depositary. However, construing the same as an escrow, it would appear that such agreement, standing alone, would be controlling; and since it was signed by the plaintiffs and their attorney, they thereby made Boland their agent, and the loss should fall on plaintiffs. However, considering all the facts and circumstances surrounding the closing of the deal, the drafting, modifying, and signing of the agreement, with all the parties being represented by counsel, and with Boland coming to the closing as attorney for the defendant and with an instrument naming himself as escrow agent, and thereafter the instrument being amended and signed by the plaintiffs and their attorneys in order that the closing could be effected, the Court finds that Boland was the agent of both the plaintiffs and the defendant; that both are equally responsible for allowing Boland to hold the funds, and that both should equally bear the loss of the $10,900.00," and allowed a lien for $5,450. Appellant seeks to have the lien extinguished.
It should be observed before proceeding to the consideration of the law applicable to this situation that reprehensible as was the conduct of Charles E. Boland, it can hardly be assumed that his wrongdoing in either a moral or legal sense can be imputed to the defendant in this case. Each and every member of the Florida Bar is assumed to be a man of integrity, ethical to the highest degree, by laymen of the State.
According to the law as set forth in 30 C.J.S. Escrows § 7 d, p. 1202; and in 19 Am.Jur., Escrow, Section 15, p. 432, the attorney of the grantor of the subject matter of the escrow agreement may act as escrow agent so long as his duties do not involve a conflict of interest with, or a violation of, duty to his client as principal, and so long as the condition of the escrow is not made dependent upon the client's volition.
The primary purpose of the escrow was to remove a cloud from the title of the property. This is consistent with the interest of the defendant. The defendant retained absolutely no control of the money deposited. It was placed beyond his reach for all purposes and all times.
In considering the issue of agency in this case, it is apparent that the escrow agreement itself becomes the primary consideration and the language of this agreement is all controlling. All prior negotiations are merged in the written document. Elliott v. Title Ins. & Trust Co., 1923, 64 Cal. App. 508, 222 P. 175.
*258 It is clear from the evidence in the case that both the plaintiffs and their attorney dealt directly with Boland as to all matters concerning the escrow funds, including partial distribution of the money. Plaintiffs requested and received an extension of the escrow agreement for nearly a year. There is no evidence as to whether or not all the funds were in the escrow at the time this extension was granted, but the evidence does show that $2,850 was paid by Boland to the Internal Revenue Service around June 1, 1958, almost two years after the signing of the escrow agreement.
Under the normal escrow situation where the escrow agent defaults prior to performance of the escrow condition, the loss falls upon the depositor, for he is deemed to have retained legal title to the subject matter of the escrow, and is deemed to be entitled to the return of such subject matter, should the other parties fail to perform.
There is a clear exception to this rule where under the circumstances of the escrow agreement the depositor would not be entitled to the return of the subject matter under any circumstances, irrespective of performance of the terms of the agreement.
There seems to be a complete dearth of Florida authority on the law involved in this case; however, in the case of Lipman v. Noblit, 1900, 194 Pa. 416, 45 A. 377, 378, the facts are similar in all material respects. The purchaser appeared ready, able, and willing to pay the purchase price and receive a deed. There was an unsatisfied mortgage upon the premises which it was the duty of the seller to have satisfied before he could require the whole of the money. The purchaser paid the seller all of the purchase price except the amount due on the unsatisfied mortgage, namely $1,010. The parties then agreed that such sum should be held by the purchaser's attorney, to be paid by him to the seller as soon as the mortgage was satisfied. The attorney signed the following receipt:
"Received of Mr. Lewis H. Lipman the sum of one thousand and ten dollars, to be paid to him upon the entry of satisfaction of the paid mortgage of Hymen L. Lipman to Edwin W. Lehman * * *."
The attorney then embezzled the money, and the seller sued the purchaser for $1,010.
The Lower Court held that the purchaser's attorney was custodian for the seller, and that the seller had treated the attorney as his agent for the custody of the money. The Court said:
"It is, therefore, clear that the plaintiff agreed that Shaffer should be the custodian of the money until the mortgage was satisfied. Noblit had done all that was required of him to complete his title. Lipman had not done everything that was required of him to perfect the title on his part. He was yet to satisfy the mortgage, and pending the delay he agreed that Shaffer should retain the money. Of course, the money was for Lipman, and was to be paid to him alone. Noblit had nothing further to do with it."
The Noblit case was cited subsequently in Paul v. Kennedy, 1954, 376 Pa. 312, 102 A.2d 158, 160, in which the Court said:
"The buyer performed and fulfilled all of the terms and conditions required of him by the agreement, prior to Brenner's embezzlement; the seller failed to perform prior to the embezzlement all the conditions required to be performed by him."
In the instant case, the escrow money was held by Charles E. Boland under the terms of the agreement, to be paid either to satisfy a United States tax lien or to the sellers, as the remaining portion of the purchase price. It is clear that the purchaser, Cradock, retained no legal title to these funds, for he was not entitled to their return under any circumstances.
We, therefore, conclude that as a matter of law Charles E. Boland became the agent *259 of the sellers, the plaintiffs herein; and, accordingly, the unfortunate loss must fall upon the plaintiffs under the legal principles enunciated above.
Case reversed with direction to dismiss cause at cost of plaintiffs.
ALLEN, C.J., and KANNER, J., concur.