94 N.J. Super. 300 (1967)
228 A.2d 91
RAYMOND ZAREMBA AND DANUTA ZAREMBA, PLAINTIFFS,
v.
ANDREW S. KONOPKA AND JULIA M. KONOPKA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 17, 1967.
*301 Mr. David E. Slaff for plaintiffs (Messrs. Greenbaum, Greenbaum & Rowe, attorneys).
Mr. Harry Kalat for defendants.
MATTHEWS, J.S.C.
Defendants are owners of real property commonly known and designated as 487 Palisades Avenue, Jersey City. On or about January 6, 1965 they engaged the services of one Mary V. Wourms, a licensed real estate broker of this State, as agent to sell their property. They executed a written authorization for Mrs. Wourms to act as agent, granting, among other things, the right to act solely and exclusively as agent for a period of six months. A copy of this authorization was introduced at trial.
On or about April 10, 1965 the agent introduced plaintiffs as prospective purchasers for the property. On that date, after some negotiation, defendants executed a contract of sale drawn by the agent, under which they agreed to sell the premises in question to plaintiffs for the sum of $25,500. Although at trial there was some dispute as to whether defendant Andrew Konopka signed the agreement, it was conceded that it should be considered binding on him. On April 12, two days later, the agent presented the contract to plaintiffs for their signature. They executed the contract and at the same time deposited a check in the amount of $2,475 with the agent as the balance of the down-payment, $25 having been advanced before execution. The agent, at her own suggestion, retained the deposit in view of the condition expressed in the contract which stated:
"Subject to purchasers obtaining above mortgage ($20,500  20 years at 6%). All deposits to be returned in event above mortgage is not obtained. The purchasers hereby authorize Mary V. Wourms, to *302 turn over to the Owners the Deposit monies herewith to be held in escrow by Mary V. Wourms."
Although rather inartfully expressed, it is clear that the contract was contingent upon the procurement of a mortgage commitment in the amount of $20,500. Subsequently, on or about September 20, 1965, a commitment for a mortgage in the amount of $18,000 was issued to plaintiffs, who upon receipt of same waived the condition set forth in the contract to the extent that it required a commitment in the amount of $20,500. Plaintiffs thereupon notified defendants of their intention with respect to the contingency and their readiness to close title.
After being notified of the satisfaction of the contingency, defendants requested the real estate agent to turn over the deposit monies. In response to this request, the agent delivered a check drawn on her account, which when deposited by defendants was returned for insufficient funds. They thereupon informed the agent of the deficiency and demanded payment of the deposit. After the passage of approximately one month, the agent came to defendants' home and replaced the returned check with a check drawn by a third party who was represented to be friendly to her. Upon deposit of this check, it also was returned for insufficient funds. Thereafter, plaintiffs made time of the essence of said contract, fixing December 16, 1965 at 3 P.M. and the office of an attorney-at-law as the time and place of closing. Plaintiffs appeared, prepared to close, but defendants failed to appear.
Plaintiffs contend that they are presently willing and able to effect the closing, but demand credit against the purchase price for the deposit. Defendants, too, contend that they are ready, willing and able to close title, but demand that an amount equal to the embezzled deposit be paid to them. The real estate agent is presently under indictment by the County of Hudson and is concededly judgment-proof.
I have heard the testimony of those principally involved in this transaction, other than the agent. Without question, *303 none of them was aware of the activities of Mary V. Wourms, and both must be regarded as innocents in this transaction. Because of this conclusion, based upon observation of the parties who testified and consideration of their testimony, I regard this matter as one to be disposed of solely upon legal principles.
Evidence submitted at the trial tends to establish that the funds given by plaintiffs to the real estate agent were never deposited in any bank account known to have existed in the agent's name. A review of the transcripts of such bank accounts presented at trial not only leads to this conclusion but also to the conclusion that at no time during the period April 12, 1965 through October 30, 1965 did any of the agent's accounts, individually or in the aggregate, contain a sum equal to the amount of $2,475. Plaintiffs contend that since Mrs. Wourms was the agent of defendants, they, as principals, must bear the loss of the embezzled deposit. On the other hand, defendants contend that the agent must be regarded as an escrowee, holding the deposit for the benefit of both parties; that the title to the escrow fund at the time of the deposit and until the resolution of the contingency must be regarded as having been in plaintiffs, and therefore they must bear the loss. Various out-of-state authorities are cited for the respective contentions. I am satisfied that the question here involved has not been decided in a reported decision by the courts of this State.
In Hildebrand v. Beck, 196 Cal. 141, 236 P. 301, 39 A.L.R. 1076 (Sup. Ct. 1925), the California court was presented with a case where a deposit of money by a purchaser of real estate with an escrow agent was to be paid to the vendor if and when a guarantee of title was secured. The escrowee embezzled the moneys deposited before the guarantee was obtained. The court held that the loss of the deposit must fall upon the vendee, because, at the time of the embezzlement, the vendor had not yet acquired the right to receive the funds. The court, in reaching this conclusion, stated:
*304 "It is at once apparent that the money deposited by the vendee with the escrow company was not deposited with the company for the account of the vendor at the time the deposit was made, but that it was to be so applied when the Eshleman Realty Company could secure for the vendee `a title guaranty.' Pending the procurement of the title guaranty the Eshleman Realty Company held the money in trust for the vendee and the vendor had no claim to it. In other words, the Eshleman Realty Company never had any money paid to it for the account of the vendor until the very instant that the company procured for the vendee `a title guaranty.' If, in the interim between the deposit of the money with the company and the securing of the `title guaranty' by the company, the money was embezzled, then it was the money of the vendee that was embezzled, and the Eshleman Realty Company would have no authority to deliver to the vendee the title guaranty for the reason that at the instant of time when the title guaranty had been secured no money had been paid to the company for the account of the vendor.
As before indicated, the finding of the trial court was that the money deposited by the vendee was embezzled shortly after its deposit. If this finding is supported by the evidence, it follows that the money embezzled was the money of the vendee, and that as a result the Eshleman Realty Company, when delivering the deed and title guaranty to the vendee, was acting without its authority.

* * * * * * * *
The money of the vendee having been embezzled on February 5, 1921, there was no money of the vendee's in the hands of the company on February 26, 1921, when the certificate of title was issued by the title insurance company, to be applied to the account of the vendor. This being so, no title passed to the vendee, and the vendor is entitled to retain possession of the property." (196 Cal., at pp. 145-147, 236 P., at pp. 303, 304)
This rule has been followed in California in such cases as Crum v. Los Angeles, 110 Cal. App. 508, 294 P. 430 (D. Ct. App. 1930), and Pagan v. Spencer, 104 Cal. App.2d 588, 232 P.2d 323 (D. Ct. App. 1951). Both in Crum and Pagan the court held that where the purchase price of realty has been paid to an escrow holder which is either embezzled or lost, the loss falls upon the one who owns the property at the time of its embezzlement or loss.
This rule was followed by the courts of Florida and Wisconsin in Cradock v. Cooper, 123 So.2d 256 (Fla. D. Ct. App. 1960); Turck v. Seefeldt, 268 Wis. 559, 68 N.W.2d 534 (Sup. Ct. 1955); and Van Dyke v. Lauer, 9 Wis.2d 141, *305 100 N.W.2d 335 (Sup. Ct. 1960). In Cradock v. Cooper, the Florida appellate court, although recognizing the afore-mentioned rule, determined that under the facts before it an exception should exist because, under the escrow arrangement there made, the depositor was in no event entitled to the return of the funds deposited, regardless of performance of agreement. Cases which are also in accord with Hildebrand v. Beck, supra, include Foster v. Elswick, 4 S.W.2d 946 (Ark. Sup. Ct. 1928); Angell v. Ingram, 35 Wash.2d 582, 213 P.2d 944, 15 A.L.R.2d 865 (Sup. Ct. 1950), and Asher v. Herman, 49 Misc.2d 475, 267 N.Y.S.2d 932 (Sup. Ct. 1966).
In Mathis v. Yarak, 71 N.J. Super. 234, 239 (App. Div. 1961), an action involving a contract for the sale of real estate which contained a contingency for the procurement by the purchaser of an F.H.A. mortgage and which provided that the deposit be held in escrow by the real estate agent, "to be paid to the seller less brokerage commission if the mortgage contingency is met or waived, or returned to the purchaser if this agreement is voided as herein provided," the Appellate Division held that the real estate agent was holding the funds as an escrow holder, acting for both parties, and that when the contingency failed the broker was obliged to return the deposit money to the purchaser. The holding that one acting as escrowee acts as agent for both parties to the escrow, has been firmly established in our law. See Kelly v. Shinick, 91 N.J. Eq. 97 (E. & A. 1919); Mantel v. Landau, 134 N.J. Eq. 194 (Ch. 1943); Cooper v. Bergton, 18 N.J. Super. 272 (App. Div. 1952). Such a holding is of no help in resolving the matter.
Plaintiffs, resorting to the dual agency nature of an escrowee, argue that the escrowee here could not, under the terms of the escrow arrangement, properly return the fund to them until the contingency provided for in the contract of sale was resolved or waived; that since the condition was waived, at least in part, the escrow conditions were then resolved and the vendors became entitled to the fund; this *306 being the first time that either of the parties to the escrow can be regarded as being entitled to the funds, defendants, of necessity, must bear the loss. Defendants argue that they at no time were entitled to the fund, until the contingency under the contract of sale was waived; upon waiver, there were no funds in escrow; since this was so, defendants contend, the loss must be borne by the party regarded as owner of the fund at the time that it was embezzled. The losers under this argument would, of course, be plaintiffs.
The rule appears to be fairly well settled in other jurisdictions that if property is embezzled or lost by an escrow holder, the loss as between the buyer and seller will fall upon the one who owned the property embezzled or lost at the time. Under the facts presented here it cannot be disputed that defendants, as sellers, were never entitled to receive the deposit monies at any time that they were held by the escrowee Wourms because of the mortgage commitment contingency included in the contract of sale. On the other hand, under the terms of the escrow, title to the funds held in escrow was necessarily under the control of the plaintiffs, for whose benefit the contingency existed and whose efforts and status dictated whether the contingency would be resolved or not. Actually, under the facts presented here, their control is emphasized by their partial waiver of the contingency. Under these circumstances equitable title, at least, must be regarded as having been in plaintiffs until the contingency was resolved. Accordingly, the loss precipitated by the embezzlement must be borne by plaintiffs.
It was suggested in summation that because both parties to this action might be regarded as innocents to the wrongdoing, equity should, as between the parties, impose the burden of loss on the party whose acts precipitated the events which brought about the loss. Under such an argument defendants' act of selecting the real estate agent Wourms would be considered as a negligent act and therefore causally related to the loss. Without expressing any view of the merits *307 of such an argument in a proper case, I merely observe that such a principle should not obtain under the facts presented here. Assuming the choice of agent to have been negligent, it is apparent that plaintiffs' conduct in endorsing in blank a cashier's check in the amount of $2,475 to the order of the escrowee, thus placing her in a position to negotiate the same freely, must also be regarded as an act of negligence. In short, neither party can be described as being nonnegligent under the facts presented.
Judgment for the defendants without costs.