GE CAPITAL MORTGAGE SERVICES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT v. TYRON E. AVENT, BRANCH BANKING & TRUST COMPANY OF NORTH CAROLINA, AND HERBERT HENDERSON, JR. AND WIFE, DEBORAH L. HENDERSON, DEFENDANTS-APPELLEES

No. 937SC233

(Filed 19 April 1994)

**Vendor and Purchaser § 9 (NCI3d)— real estate closing—escrow funds—misappropriation of funds—burden of loss**

The trial court correctly granted summary judgment for defendants in an action to determine the burden of loss where plaintiff sold a lot and house to the Hendersons, financing was arranged through BB&T, the net proceeds of the sale were placed in escrow at the closing because a cancelled deed of trust had not been received by the attorney, Avent, the cancelled deed of trust was subsequently obtained, it was determined that Avent had misappropriated the funds, Avent executed a confession of judgment which was apparently uncollectible, and plaintiff brought this action to determine whether the seller, the buyers, or the lender should bear the loss. The purpose of the escrow was to insure that the funds were available to obtain cancellation of the deed of trust if plaintiff (the seller) failed to do so; or, if the deed of trust was otherwise released and cancelled by plaintiff, the funds were to be paid to plaintiff. In either situation, the funds were held by Avent for the benefit of plaintiff; in no event were the funds to be returned to the Hendersons. Thus, plaintiff must bear the loss resulting from Avent's embezzlement of the escrow funds.

**Am Jur 2d, Vendor and Purchaser §§ 366, 367.**

Appeal by plaintiff from judgment entered 10 December 1992 by Judge Thomas S. Watts in Nash County Superior Court. Heard in the Court of Appeals 9 December 1993.

*Womble Carlyle Sandridge & Rice, by Elizabeth L. Riley and Susan S. McFarlane, for plaintiff-appellant.*

*Ward and Smith, P.A., by John M. Martin, Timothy C. Barber and Andrew H. D. Wilson, for defendant-appellee Branch Banking & Trust Company.*

*William W. Aycock, Jr., for defendant-appellees Herbert Henderson, Jr., and Deborah L. Henderson.*

MARTIN, Judge.

Plaintiff appeals from the entry of summary judgment in favor of defendants Branch Banking and Trust Company of North Carolina (BB&T) and Herbert Henderson, Jr., and wife Deborah L. Henderson (the Hendersons). The facts giving rise to this action are not in dispute. Plaintiff performs relocation services for corporate employees. As part of its services, plaintiff pays relocating employees a sum equal to their home equity and satisfies any outstanding mortgage liens against their property. In exchange for these payments, plaintiff receives the right to market and sell the employee's home and receive the proceeds therefrom.

On 2 October 1990, plaintiff contracted with Mr. and Mrs. David Selheim to purchase the Selheims' Rocky Mount residence for the sum of $147,950.00. Pursuant to this agreement, plaintiff paid the Selheims $80,071.99, an amount equal to their equity in the property, and was obligated to satisfy the balance due on the Selheims' mortgage, which was held by Nancy Selheim, who was David Selheim's mother. Plaintiff was entitled to receive the proceeds from the eventual sale of the property. On 6 October 1990, plaintiff paid the balance due on the Selheims' mortgage to Nancy Selheim. However, plaintiff did not have the Selheim deed of trust cancelled of record.

On 19 October 1990, the Hendersons agreed to purchase the property from plaintiff for the sum of $147,500.00. The Hendersons obtained financing for the purchase from BB&T and retained Tyron E. Avent as their closing attorney. BB&T forwarded to Avent its Uniform Specific Closing Instructions. These instructions provided that Avent was not to disburse the loan proceeds until he was in a position to obtain from the title insurance company a policy insuring BB&T a first mortgage lien.

The closing of the sale occurred on 28 November 1990. On that date, plaintiff delivered a deed to the property to the Hendersons, which was duly recorded on the same date. However, because the Selheim deed of trust had not been cancelled of record, the net proceeds of the sale, $136,723.74, were placed in escrow, with Avent acting as the escrow agent, until plaintiff could produce the cancelled Selheim deed of trust.

On 18 January 1991, plaintiff notified Avent that the outstanding deed of trust had been cancelled and requested, pursuant to

the escrow agreement, that Avent wire to plaintiff the funds which he held in escrow, but Avent failed to do so. After repeated unsuccessful attempts to obtain the funds, it was determined that on or about 28 December 1990, Avent had misappropriated the funds. On 18 October 1991, Avent was disbarred and surrendered his license to practice law in the State of North Carolina. On 15 June 1992, Avent executed a Confession of Judgment in favor of plaintiff in the amount of $136,723.74.

The present action came for hearing on 7 December 1992 upon motions by plaintiff and by defendants Henderson and BB&T for summary judgment. The court granted summary judgment in favor of defendants. Plaintiff appealed.

The parties agree that the loss at issue resulted from the illegal act of former attorney Avent and that he is the party who should bear ultimate responsibility for the repayment thereof. However, because the judgment against Avent is apparently uncollectible, the question with which we are presented is whether plaintiff, as seller, the Hendersons, as buyers, or BB&T, as lender, should bear the loss occasioned by Avent's embezzlement of the escrow funds.

Although this is an issue of first impression in this jurisdiction, the parties agree that generally when property in the custody of an escrow holder is lost or embezzled by the holder, as between the buyer and the seller, the loss falls on the party who was entitled to the property at the time of the loss or embezzlement. This rule is followed in numerous other jurisdictions. *Ward Cook, Inc. v. Davenport*, 243 Or. 301, 413 P.2d 387 (1966); *Schmidt v. Fitzsimmons*, 190 Or. 415, 226 P.2d 304 (1951); *Foster v. Elswick*, 176 Ark. 974, 4 S.W.2d 946 (1928); *Crum v. City of Los Angeles*, 110 Cal. App. 508, 294 P. 430 (1930); *Angell v. Ingram*, 35 Wash.2d 582, 213 P.2d 944 (1950); *Zaremba v. Konopka*, 94 N.J.Super. 300, 228 A.2d 91 (1967); *Asher v. Herman*, 49 Misc.2d 475, 267 N.Y.S.2d 932 (1966); *Van Dyke v. Lauer*, 9 Wis.2d 141, 100 N.W.2d 335 (1960); *see generally*, 15 A.L.R. 2d 870, 871; 28 Am Jur. 2d *Escrow* § 20 (1966).

Ordinarily, the determination as to which party is entitled to the escrow property depends upon whether the conditions of the escrow were satisfied prior to the loss or embezzlement. *Crum v. Los Angeles*, 110 Cal. App. 508, 294 P. 430. For example, if the escrow agent embezzles the purchase price prior to the seller's performance of the escrow condition, the buyer has retained title

to the money and must therefore bear the loss. *Id.* Conversely, if the embezzlement occurs after the seller has performed the escrow condition, then the seller must bear the loss because he was entitled to it at the time of the embezzlement. *Id.; see also, Cradock v. Cooper,* 123 So.2d 256 (Fla.App. 1960).

There is an exception, however, to this general rule; where the buyer would under no circumstance be entitled to return of the escrow funds, the burden of loss is upon the seller whether the embezzlement occurs before or after the performance of the escrow condition. *Cradock, supra.* In *Cradock,* the defendant contracted to purchase property from the plaintiff and the transaction was closed as scheduled. However, the IRS had a claim against the seller which the defendant's attorney contended was a lien against the property. The parties therefore agreed to escrow a portion of the purchase price with the defendant's attorney acting as the escrow agent. The escrow funds were to go to the seller if the IRS claim was satisfied; and, if not, it would go first to satisfy the claim with the remainder to the seller. The IRS claim was eventually settled but the defendant's attorney had by then misappropriated the funds and the seller filed suit to establish a lien against the buyer's property for the misappropriated portion of the purchase price.

The court held that the loss should be borne by the seller because the escrow funds were to be paid either to satisfy the IRS claim, or to the sellers if the claim was otherwise satisfied. The buyer retained no title to the funds because he was not entitled, under any circumstance, to have the funds repaid to him. Thus, the court placed the burden of the loss on the seller. *See also, Paul v. Kennedy,* 376 Pa. 312, 102 A.2d 158 (1954); *Lipman v. Noblit,* 194 Pa. 416, 45 A. 377 (1900).

This exception to the general rule was also recognized in *Stuart v. Clarke,* 619 A.2d 1199 (D.C.App. 1993), a case that bears a strong factual resemblance to the present case. In *Stuart,* the plaintiff contracted to sell a parcel of real property to the defendant. At the time of the contract, the seller was aware that there was an unreleased deed of trust on the property. Prior to closing, the seller was advised that he could not convey clear title to the property without first obtaining a release of the deed of trust. Despite this knowledge, the seller took no action to obtain a release of the deed of trust prior to the date of closing. Conversely, the

GE CAPITAL MORTGAGE SERVICES v. AVENT

[114 N.C. App. 430 (1994)]

buyers came to the closing prepared to meet their contractual obligations and pay for the property. Due to the seller's inability to convey good title, the parties agreed to escrow a portion of the purchase price until the seller obtained a release of the deed of trust. *However, the deed to the property was delivered to the buyers at the closing.* The escrow agent thereafter absconded with the escrow funds.

In arriving at its decision to place the loss on the seller, the court recognized the rule which places the loss on the party entitled to receive the funds at the time of their loss. The court then said:

> [T]his case is distinguishable from other, more typical escrow situations because the title to the property has passed to the buyer, and thus the proceeds of the sale — including the amount retained in escrow — have passed to the seller, subject to his performance of a condition subsequent entitling him to release of the escrowed funds. The buyers cannot logically be the owners of both the purchased property and the portion of the money in escrow.

*Stuart v. Clarke*, 619 A.2d at 1200.

Like the buyers in *Stuart*, the Hendersons came to the scheduled closing prepared to fulfill all of their obligations under their contract for the purchase the Selheim property. Plaintiff, however, came to the closing knowing that it had not obtained cancellation of the outstanding Selheim deed of trust and that it was unable to convey to the Hendersons the marketable title for which they had bargained. Despite plaintiff's failure to meet its contractual obligations, the Hendersons agreed to proceed with the closing and to the deposit of the net proceeds of the sale due plaintiff in Avent's trust account pending cancellation of the Selheim deed of trust. In return, plaintiff delivered the deed to the property to the Hendersons which they promptly recorded.

Clearly, the purpose of the escrow was to insure that the funds were available to obtain cancellation of the Selheim deed of trust if plaintiff failed to do so; or, if the Selheim deed of trust was otherwise released and cancelled by plaintiff, the funds were to be paid to plaintiff. In either situation, the funds were held by Avent for the benefit of plaintiff; in no event were the funds to be returned to the Hendersons. Having obtained title to the

property, the Hendersons no longer held title to the funds in escrow. Thus, under *Cradock* and *Stuart*, plaintiff must bear the loss resulting from Avent's embezzlement of the escrow funds.

Our holding is consistent with the equitable principle that " 'where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence or by his negligent conduct made it possible for the loss to occur, must bear the loss.' " *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 30, 209 S.E.2d 795, 799 (1974). While it is true that Avent was retained by the Hendersons, and consented to by BB&T, it was plaintiff who gave him the opportunity to abscond with the escrow funds by failing to meet its contractual obligations, thereby necessitating the escrow agreement as a means of closing the transaction as scheduled.

In conclusion, we hold that plaintiff was entitled to the funds held in escrow at the time of the embezzlement and that plaintiff must therefore bear the loss resulting therefrom. The trial court's entry of summary judgment in favor of defendants Henderson and BB&T is affirmed.

Affirmed.

Judges JOHNSON and McCRODDEN concur.