### In re BEACON 21 DEVELOPMENT CORP., Debtor.

### SUNPOINT SAVINGS BANK, Plaintiff,

### v.

### BEACON 21 DEVELOPMENT CORP., American Pioneer S & L Assoc., and Thomas Haldane, as Chairman and Representative of Creditors' Committee, Defendants.

Bankruptcy No. 86–00888–BKC–TCB. Adv. No. 86–0409–BKC–TCB–A.

United States Bankruptcy Court, S.D. Florida.

Aug. 1, 1986.

Norman L. Schroeder, II, McGee, Jordan, Shuey, Koons, Schroeder & Morris, P.A., Lake Worth, Fla., for plaintiff.

Gary I. Zwickel, West Palm Beach, Fla., for defendant Beacon 21.

James E. Copeland, North Palm Beach, Fla., for Creditors' Committee.

James H. McCarty, Jr., Fort Pierce, Fla., for defendant American Pioneer.

Harry D. Lewis, Holland & Knight, Miami, Fla., for Chicago Title.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

Plaintiff seeks recovery of $756,919, the net proceeds of a loan improperly disbursed by the escrow agent to the debtor after bankruptcy. The creditors' committee appointed in this case has answered, asserting that the funds belong to the estate. The matter was tried on July 22.

The facts are completely undisputed and, so far as they are essential to this decision, are simple.

On March 24, 1986 (four days before bankruptcy) a closing was held in which plaintiff entrusted the funds in question to an attorney as escrow agent with the instruction that:

These funds are not to be disbursed until you have satisfied all of the requirements listed on your title binder, and are prepared to issue your final policy showing this Institution to be in a first lien position.

The title binder reflected a single mortgage encumbering the property in the original principal amount of $850,000. However, at that moment and at all times relevant to this proceeding, the property was also subject to a separate lien of the same institution on account of a loan made by that lender which was cross-collateralized by the property in question here. It is undisputed that the two liens exceeded the net loan proceeds advanced by plaintiff and the total of both liens appears to exceed $1.5 million.

Plaintiff then had no knowledge of the other lien and the debtor/borrower believed that the other lien holder would release its lien as a part of the transaction negotiated with the plaintiff. However, the other lien holder refused to do so and the escrow holder could not and cannot comply with the conditions for disbursement of the funds entrusted to him.

Four days after bankruptcy (which occurred on March 28) the escrow agent returned the money to the plaintiff with a letter explaining the circumstances which had frustrated the contemplated loan. Instead of accepting and retaining its money, plaintiff returned the check to the escrow agent three days later, and demanded:

that the Mortgage and all other recordable documents be submitted to the Clerk of the Circuit Court for Martin County for recording and that a final title insurance policy pursuant to the commitment be issued immediately.... The fact that the existing Mortgagee may have "backed out" of arrangements for satisfaction is not a concern of SunPoint.

On April 8, four days after plaintiff had returned the check to the escrow agent,

and after the escrow agent had once again unsuccessfully attempted to satisfy both liens against the property, the check was deposited in the debtor's account. It presently remains in the trust account of the debtor's counsel pending disposition of this matter.

This action seeks the recovery of the funds. The debtor acknowledges possession of the funds and plaintiff's entitlement to their return. The creditors' committee and the Bank which holds both liens oppose the plaintiff on the grounds that (1) plaintiff's return of the check on April 4 constituted a waiver or modification of the agreement eliminating the requirement that it obtain a first lien, (2) the funds cannot be traced to the debtor, (3) plaintiff's sole remedy is an action against the escrow agent, and (4) if plaintiff receives return of its money, it must cancel the note and satisfy its recorded lien against the debtor's property. I agree with these defendants with respect to their fourth point. I find no merit in their other contentions.

Plaintiff's letter of April 4, in light of the history of this transaction, constitutes neither a waiver nor modification of the plaintiff's insistence that it receive a first lien as security for its loan and that the primacy and validity of that lien be insured by title policy. Plaintiff merely wanted the benefit of its original bargain. It expected, unrealistically perhaps, the escrow agent to eliminate the problem presented by the other lien, but it waived and modified nothing.

■ I find that plaintiff has clearly traced the net loan proceeds from their deposit on March 25 in the escrow agent's trust account to their withdrawal on April 8 for the purchase of a cashier's check on April 8 and the ultimate deposit of that cashier's check in the debtor's account. The fact that the trust account involved funds belonging to other parties is of no consequence. Money is, of course, fungible and the account never fell below the amount in question here. The debtor's admission that it now holds those funds eliminates any question in my mind.

As between the parties to an escrow agreement, it is clear in Florida where this escrow occurred that:

> Under the normal escrow situation where the escrow agent defaults prior to performance of the escrow condition, the loss falls upon the depositor, for he is deemed to have retained legal title to the subject matter of the escrow, and is deemed to be entitled to the return of such subject matter, should the other parties fail to perform. *Cradock v. Cooper*, 123 So.2d 256, 258 (Fla.[App.]1960).

In that case the escrow agent, the attorney for the purchaser, stole the money. The court rejected the contention that vendor and purchaser should equally bear the loss and imposed the entire loss on the purchaser/depositor of the escrow. This rule is inapposite here. The escrowed funds, though improperly disbursed by the escrow agent, have not been lost, but are readily recoverable for the benefit of their rightful owner. If the return of this escrow had been sought from the escrow agent, he could have cross-claimed the funds from the debtor and the debtor would be required to satisfy plaintiff. Equity, of course, regards that done which should be done and I reject defendants' argument that plaintiff's sole remedy is against the escrow agent.

■ The parties have debated procedural considerations at length. Defendants argue that no escrow existed because the escrow agent was the debtor/borrower's attorney, as well as an officer and shareholder of the debtor. This contention was rejected in *Cradock*.

The parties differ as to whether these funds ever became "property of the estate" as that term is defined in 11 U.S.C. § 541. On the date of bankruptcy, plaintiff held an equitable interest in the escrowed funds, but the title and possession of the funds was in a third party. The money was not then property of the estate. However, the money became property of the estate after bankruptcy when it was disbursed by the escrow agent to the debtor. This analysis does not seem to me to be significant to the

resolution of this case. There are several alternative theories under which plaintiff is entitled to relief. However, I am aware of none under which plaintiff could get its money back without satisfying the debtor's note and satisfying the mortgage which remains of record.

As is required by B.R. 9021(a), a separate judgment will be entered in favor of the plaintiff and against the debtor in the amount of $756,919 and plaintiff is ordered, upon receipt of that sum, to surrender the debtor's note and to satisfy the debtor's mortgage of record at plaintiff's expense. Costs may be taxed on motion.